**William H. PATTON, Appellant,**

v.

**MEMORIAL HOSPITAL OF SOUTHERN OKLAHOMA, INC., Appellee,**

and

**Robert Patzkowsky, D.O.; Eleanor S. Irvine, M.D. d/b/a Professional Medical Laboratory; Eleanor S. Irvine, M.D., P.A., individually, Defendants.**

**No. 84592.**

Court of Appeals of Oklahoma, Division No. 4.

Jan. 10, 1995.

Rehearing Denied Feb. 21, 1995.

Certiorari Denied April 27, 1995.

---

Steven E. Clark, Larry Bishop, Steven E. Clark & Associates, Oklahoma City, for appellant.

Dale Reneau, Robin A. Wiens, Kevin E. Hill, Fenton Fenton Smith, Reneau & Moon, Oklahoma City, for appellee Memorial Hosp. of Southern Okl., Inc.

Russell L. Hendrickson, G. Calvin Sharpe, Pierce Couch Hendrickson, Baysinger & Green, Oklahoma City, for defendant Eleanor S. Irvine, M.D., P.A. d/b/a Professional Medical Laboratory and Eleanor S. Irvine, M.D.

W. Wayne Mills, Glynis C. Edgar, Mills & Whitten, Oklahoma City, for defendant Robert Patzkowsky, D.O.

GOODMAN, Judge.

This appeal was assigned to the accelerated docket pursuant to Civil Appellate Procedure Rule 1.203(A)(1)(b), 12 O.S.Supp.1993, ch. 15, app. 2.

This is an appeal from a November 9, 1994, Journal Entry of Judgment sustaining defendant Hospital's motion for a summary judgment in its favor on all claims brought by the plaintiff. The trial court properly found no just reason to delay this appeal and correctly certified its order as a final appealable judgment. 12 O.S.Supp.1993 § 994.

■ The standard of review of a summary judgment granted pursuant to District Court Rule 13, 12 O.S.1991, ch. 2, app., is whether the facts, inferences and conclusions, viewed in the light most favorable to the party opposing the motion, are such that reasonable men, in the exercise of fair and impartial judgment, might reach differing conclusions from those facts. If so, the motion must be denied. *White v. Wynn,* 708 P.2d 1126 (Okla. 1985).

Based upon our review of the evidence before the trial court, we find no error and affirm its order.

## I

Patton brought suit against Memorial Hospital of Southern Oklahoma and two physicians who participated in the medical treatment of his late wife. His claim against the hospital is two-fold. He alleges Dr. Irvine, a pathologist, negligently failed to diagnose and treat his wife's cancer. Next, he alleges Dr. Irvine was an agent or servant of the hospital; therefore, the hospital is vicariously liable.

He also contends the hospital was negligent because it breached an independent duty to his wife to insure that the course of treatment for her cancer was adequately conducted.

Patton's wife was diagnosed with cervical cancer in 1989 by Dr. Patzkowsky, following a pathological study done by Dr. Irvine. The affected area was surgically removed, but the cancer reappeared in 1992, and Mrs. Patton died later.

Patton claims all the defendants had the duty to "stage" her cancer. Staging cancer is the methodology used to assess the extent of the cancer and assign a value to that assessment. In turn, the various treatment plans available to the patient are indexed according to the stage in which the cancer is progressing. The appropriate treatment can then be initiated, depending upon the stage of the cancer. Failing to stage his wife's cancer, contends Patton, meant his wife did not get the necessary treatment at the proper time, causing her death.

The hospital filed a motion for summary judgment on April 26, 1994, claiming the duty to stage a cancer is that of the doctor, and not of the hospital. The hospital further argued that even though they provided Dr. Irvine with the facilities to conduct the pathology testing, it did not supervise, control, or exercise any direction over her work. Affidavits and exhibits were attached to substantiate these arguments.

Patton responded with the affidavit of his medical expert who stated he would testify that, besides the doctors, the hospital owed an independent duty to Mrs. Patton to stage her cancer, and that its failure to do so led to her death.

The trial court, after hearing the arguments, ruled in favor of the hospital, finding that Dr. Irvine was not an agent or servant of the hospital and, as a matter of law, the responsibility for preparing treatment plans is that of the physician, and not the hospital.

We review each of Patton's allegations in turn.

## II

■ Patton seeks to invoke the doctrine of respondeat superior against the hospital by claiming that it is vicariously liable for the negligence of its agent, Dr. Irvine. The trial court correctly determined, however, that based upon the evidence before it, "Eleanor S. Ervine, [*sic*] M.D., P.A. was not acting as an agent or servant of the defendant, Memorial Hospital of Southern Oklahoma ... at the time care and treatment was rendered to Patricia Patton." There was testimony from both the hospital and Dr. Irvine that the hospital served only as a situs for Dr. Irvine to conduct her pathology practice, and at no time ever employed, directed, or controlled the actions of Dr. Irvine. There was no evidence brought forth by Mr. Patton that an agency relationship existed. Without proving the hospital exercised the control and direction of Dr. Irvine's work necessary to create an agency relationship, Mr. Patton's attempt to invoke respondeat superior must fail. *Weldon v. Seminole Mun. Hosp.,* 709 P.2d 1058 (Okla.1985); *Smith v. St. Francis Hosp.,* 676 P.2d 279 (Okla.Ct.App.1983).

## III

■ Mr. Patton's second allegation against the hospital is that it owed an independent duty to Mrs. Patton to stage her cancer.

The record shows the testimony of the two defendant doctors is consistent: the duty to stage the patient's cancer, and design a corresponding treatment plan, is a physician's duty. Dr. Patzkowsky, the surgeon, said it was the job of the oncologist or pathologist, while pathologist Dr. Irvine testified it was the responsibility of the treating physician. Neither testified, in the record presented, that the hospital had that duty. The hospital also presented an affidavit from one of its administrators which alleged there were no known regulations or guidelines which required the hospital, independently of the physicians, to stage the cancer.

Patton's evidence consisted of the affidavit of his expert witness, Dr. Atkinson, M.D., who concluded the hospital had the same duty as the physician to stage. The pertinent parts of the affidavit are as follows:

4. Ardmore Adventist Hospital's [the predecessor to Memorial Hospital] care of Patricia Patton was negligent and beneath acceptable standards of care and treatment at least in the hospital's failing to ensure that Patricia Patton's squamous cell cervical carcinoma was properly staged.

5. The applicable standard of care required Ardmore Adventist Hospital to stage or to obtain staging for Patricia Patton's squamous cell cervical carcinoma independent of and in addition to the requirements of the standard of care for Patricia Patton's treating surgeon and diagnosing pathologist.

6. Failure of Ardmore Adventist Hospital to stage or to obtain proper staging for Patricia Patton's squamous cell cervical carcinoma causally contributed to Patricia Patton's improper treatment and death within a reasonable degree of medical probability.

The expert also sponsored in his affidavit the medical standards as promulgated by the International Federation of Gynecology and Obstetrics (FIGO). However, these guidelines do not indicate which health care provider is given the responsibility to comply with those standards. Patton did not present any other evidence in the form of testimony, statutes, or evidence of medical standards which placed the duty to stage on the hospital.

In medical malpractice cases, "whether a duty exists is a question of law; whether it has been breached is a question of fact." *Wofford v. Eastern State Hosp.*, 795 P.2d 516, 521 (Okla.1990).

The trial court correctly found "as a matter of law, the responsibility for preparing treatment plans is that of the physician, not the hospital." Dr. Atkinson's affidavit raises questions of fact as to whether the hospital breached the standard of care, and whether there was legal causation between that breach and the death of Mrs. Patton. What the affidavit fails to do, however, is establish the threshold requirement that the hospital "had a duty to the particular plaintiff alleged to have been harmed." *Wofford*, 795 P.2d at 518. "Whether a defendant stands in such relationship to a plaintiff that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff is a question for the court." *Id.* at 519. Dr. Atkinson's affidavit does not put forth any law, or refer us to any guidelines which prove as a matter of law that the FIGO guides are required to be adopted by the hospital. His affidavit states what the standard is, and that the hospital did not follow the standard, but the crucial link— that the hospital is bound by the standard— is missing. The affidavit attempts to make a legal conclusion without any basis in fact. The court correctly found, as a matter of law, the duty to stage was not that of the hospital. As there can be no breach of a duty that does not exist, the questions of fact raised by Dr. Atkinson's affidavit need not be considered by the trial court. Without disputed facts, summary judgment is proper.

## IV

We find reasonable persons would not differ in determining that Dr. Irvine was an independent contractor, without any ties to the hospital, other than being allowed a situs in which to conduct her profession. Thus,

the hospital is not vicariously liable for any negligent acts done by Dr. Irvine. Similarly, the facts are clear that while there may be a duty on the patient's treating physician to stage the patient's cancer, the plaintiff failed to produce evidence that the hospital has such a duty when it merely provides facilities for the use of a patient's treating physician.

We affirm the order of the trial court.

TAYLOR, P.J., and STUBBLEFIELD, J., concur.