2000 OK CIV APP 107

**Darrell GABLER and Kathern Gabler, husband and wife, Plaintiffs/Appellants,**

v.

**HOLDER AND SMITH, INC., d/b/a Allegra Print & Imaging, an Oklahoma corporation, American Speedy Printing Centers, Inc., a Michigan corporation, Jerry W. Holder, individually and as president of Holder and Smith, Inc., and Robert L. Todd, individually and as vice-president of Holder and Smith, Inc., all jointly and severally, Defendants/Appellees.**

No. 94,308.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 1, 2000.

James C. Hodges, Kevin H. Wylie, Tulsa, Oklahoma, for Appellants.

Gerri A. Inman, Tulsa, Oklahoma, for Appellees.

*OPINION*

CAROL M. HANSEN, Vice-Chief Judge:

¶1 Appellants, Darrell Gabler and Kathern Gabler (Gablers), who are husband and wife, initiated this action after they were involuntarily discharged from employment by Appellee, Holder & Smith (H & S). Darrell Gabler began working for H & S in 1988. When he was discharged on May 29, 1999, he was vice-president of H & S, and owned five percent of its common stock. Kathern Gabler, who was also discharged on May 29, 1999, began working for H & S in 1996 and was manager of its graphics department.

¶2 H & S is an Oklahoma corporation operating in Tulsa as Allegra Print and Imaging. Appellees, Jerry Holder (Holder) and Robert Todd (Todd), are president and vice-president of H & S, and own substantially all common stock in the corporation. Appellee, American Speedy Printing Centers, Inc. (American), is a Michigan corporation. Gablers alleged in their Petition that American was "controlling corporation/owner/franchis-

er of Defendant H & S and doing business in Tulsa County."

¶3 In their Petition, Gablers further alleged their firing constituted [1] breach of oral and written agreements, and violation of the public policy of the state of Oklahoma, [2] tortious interference with present and prospective business relations, [3] a violation of the Oklahoma General Corporation Act, 18 O.S.1991 § 1001 *et seq.,* emotional distress, with loss of consortium.

¶4 H & S, Holder and Todd moved to dismiss Gablers' Petition on the basis that Gablers could "prove no set of facts which entitle them to relief" on any claim. American filed a separate motion seeking dismissal for lack of *in personam* jurisdiction. The trial court granted both motions to dismiss without specific findings. Gablers asked the trial court to reconsider its dismissal orders. The trial court denied the motions to reconsider and Gablers appeal from that denial. Their appeal is submitted without appellate briefing in accordance with the accelerated procedure under Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. Supp.1999, Ch.15, App.

## RIGHT TO HEARING ON MOTION TO RECONSIDER

¶5 As a preliminary procedural matter, Gablers contend the trial court abused its discretion by denying their motions for reconsideration without a hearing "in contravention of OKL. STAT. TIT. 12, § 651." However, § 651 does not contain an express provision relating to a hearing, and Gablers do not direct us to any other legal authority finding an implied right to a hearing under that section.

¶6 To the contrary, Rule 4(h), Rules for District Courts, 12 O.S. Supp.1999, Chap. 2, App. 1, provides "[m]otions may be decided by the court without a hearing." Further, we find nothing in the record to indicate Gablers even requested a hearing. Issues not raised at trial will not be considered for the first time on appeal. *Northwest Datsun v. Okla. Motor Vehicle Comm.,* 1987 OK 31, 736 P.2d 516.

## STANDARD OF REVIEW

¶7 Because Gablers' motions to reconsider were filed within ten days of filing of the orders dismissing their claims, they may appeal from both the dismissal orders and the order denying the motions to reconsider. 12 O.S. Supp.1999 § 990.2(A). The order denying the motions to reconsider is reviewed under the same standard as a motion for new trial. *Id.; Schepp v. Hess,* 1989 OK 28, 770 P.2d 34.

¶8 A trial court is vested with broad discretion in granting or denying a new trial. *Dominion Bank of Middle Tennessee v. Masterson,* 1996 OK 99, 928 P.2d 291, 294. Unless it is apparent the trial court erred in some pure simple question of law, or acted arbitrarily, the ruling on a motion for new trial will not be disturbed on appeal. *Id.; Poteete v. MFA Mut. Ins. Co.,* 1974 OK 110, 527 P.2d 18.

¶9 In their response to the motion to dismiss filed by H & S, Holder and Todd, Gablers attached several documents in support of their claims. A motion to dismiss pursuant to 12 O.S.1991 § 2012(B)(6) [failure to state a claim upon which relief can be granted] is converted to one for summary judgment when materials outside the pleadings are presented to and not excluded by the court. *Washington v. State ex rel. Dept. of Corrections,* 1996 OK 139, 915 P.2d 359; *Shaffer v. Jeffery,* 1996 OK 47, 915 P.2d 910.

¶10 Upon conversion to a proceeding for summary judgment, the burden changes and the movant must demonstrate there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. *Shaffer,* at 914. Review of a summary judgment is *de novo. Vance v. Federal Nat. Mortg. Ass'n,* 1999 OK 73, 988 P.2d 1275.

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

¶11 As noted above, American's motion to dismiss was based on the defense of lack of personal jurisdiction. Gablers also attached matters outside the pleading to their response to American's motion. Nor-

mally, this would raise the question whether American's jurisdictional motion should also be converted to a summary judgment proceeding. However, we need not answer that question, or the issue of jurisdiction itself, because even if personal jurisdiction were established, American would be entitled to summary judgment in accordance with § 2012(B)(6). Gablers have failed to state a claim upon which relief could be granted. We are not bound by the reasoning of the trial court and may affirm a correct result on a different legal theory. *McMinn v. City of Oklahoma City,* 1997 OK 154, 952 P.2d 517.

¶ 12 Gablers alleged by their Petition that the acts of Holder and Todd were "imputed to Defendants H & S and [American] under the theories of actual and apparent agency and *respondeat superior.*" That imputation is not in controversy as to H & S, but the allegation fails as to American.

¶ 13 In its motion to dismiss, American attached an affidavit from its president. In addressing the H & S relationship, the affidavit, among other things, stated American [1] was merely the franchiser of H & S's printing centers, [2] had no common employees, officers, directors, or shareholders with H & S, [3] exercised no day-to-day control over H & S or any of its officers, and [4] had no knowledge of the circumstances relating to Gablers' employment, nor was asked by H & S whether Gablers should be retained as employees.

¶ 14 Gablers argue it can be assumed the franchise agreement provides for "significant monetary consideration" and "some control" by American over H & S, and that "dependent upon the amount and type of control, [American] can be held liable for the acts of [H & S] under the theories of agency and/or *respondeat superior.*" Gablers, however, fail to counter American's evidentiary materials on the question of agency.

¶ 15 In support of their argument that further discovery may produce evidence to show the relationship between American and H & S might be a joint venture, Gablers attached to their response a copy of a page from American's internet website. The web page shows American offers both franchise and joint venture opportunities, but Gablers offer nothing to show the relationship is other than a franchise. With no other support, Gablers joint venture assertion is pure speculation.

¶ 16 The trial court's ruling on summary judgment must be based on the record actually presented, not on that which is potentially possible. *Frey v. Independence Fire and Cas. Co.,* 1985 OK 25, 698 P.2d 17. Gablers may not rely on the allegations of their pleadings, or the bald contention that facts exist, to defeat a motion for summary judgment. *Zaragosa v. Oneok, Inc.,* 1984 OK CIV APP 53, 700 P.2d 662. We need not address whether Gablers should have been allowed discovery because they have not raised that issue here.

¶ 17 The only evidentiary material of record on point, *i.e.,* the affidavit of American's president, states the relationship is a franchise. Gablers are entitled to favorable inferences regarding that relationship. *Diamond Plastics,* 891 P.2d at 1266. We may infer, as assumed by Gablers, some monetary consideration passes or has passed from H & S to American, and that American, as franchiser, exercises *some* degree of control over how H & S does business. See, 71 O.S. Supp.1999 § 802(5)(Defines "franchise" under the Oklahoma Business Opportunity Sales Act as agreement between seller and purchaser whereby franchisee is granted right to engage in business under marketing plan prescribed in substantial part by franchiser.)

¶ 18 Nevertheless, the burden of proving an agency status is on the one asserting it, and such status will not be assumed. *Enterprise Management Consultants, Inc. v. State, ex rel. Oklahoma Tax Commission,* 1988 OK 91, 768 P.2d 359. Gablers have failed to show any evidence of the detailed assertion of control which may make a franchise agreement the source of an agency relationship. *Id.* at 362, n. 15. Without evidence American exercised the control and direction over H & S necessary to create an agency relationship, Gablers' attempt to invoke *respondeat superior* must also fail. *Patton v. Memorial Hosp. of Southern Oklahoma, Inc.,* 1995 OK CIV APP 7, 895 P.2d 298.

¶ 19 There remains no material question of law regarding Gablers' claims against American, and the trial court did not commit any reversible error of law in dismissing those claims. The trial court did not abuse its discretion in denying Gablers' motion to reconsider the dismissal as to American.

## MOTION TO DISMISS FOR FAILURE TO STATE CLAIM UPON WHICH RELIEF COULD BE GRANTED

¶ 20 Gablers also contend the trial court committed reversible error when it dismissed each of its claims against H & S, Holder and Todd. Their first claim was for breach of employment contract, or alternatively, for wrongful discharge in contravention of public policy. Gablers do not, however, allege they had a contract of any definite term. When an employment contract is of an indefinite duration, it is terminable at will by either party. *Hayes v. Eateries, Inc.,* 1995 OK 108, 905 P.2d 778.

¶ 21 Under the well established at-will rule "an employer may discharge an employee for good cause, for no cause or for cause morally wrong, without being thereby guilty of legal wrong." *Burk v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24. However, this rule has been judicially limited by exceptions which restrict the grounds for discharging an at-will employee. *Hayes,* at 781. Among those exceptions are [a] breach of contract, and [b] public policy wrongful discharge under *Burk v. K–Mart, supra.*

## BREACH OF IMPLIED CONTRACT OF EMPLOYMENT

¶ 22 Gablers present no allegation or evidence of an express contract, but instead contend they had an *implied* contract of employment with H & S. "An implied contract is one, the existence of which is manifested by conduct." 15 O.S.1991 § 133. Gablers argue the implied contract was created by H & S's handbook—Employee Policy Guidelines (Guidelines)—and oral and written promises by Holder.

¶ 23 Employee handbooks may form the basis for an implied employment contract where the four traditional contract requisites exist: [1] competent parties, [2] consent, [3] a legal object, and [4] consideration. *Russell v. Board of County Com'rs, Carter County,* 1997 OK 80, 952 P.2d 492. Two limitations on contracts implied by employee handbooks stand identified in our case law: [a] the handbook only alters the at-will relationship with respect to accrued benefits, and [b] the promises in the handbook must be in definite terms, not in the form of vague assurances. *Id.,* at 501.

¶ 24 While the existence of an implied contract is normally a question of fact, if the alleged promises are nothing more than vague assurances, the implied contract issue may be decided as a matter of law. *Id.* Any disclaimer by an employer denying the intent to make the handbook a part of the employment relationship must be clear, but an employer's conduct which is inconsistent with such disclaimer may negate it. *Id.*

¶ 25 Gablers alleged they were discharged without benefit of warning letters as required by H & S's Guidelines. They argued that pursuant to the Guidelines no employee would be suspended or terminated from employment until he or she had been warned in writing at least twice, and asserted they had never received written or verbal warnings.

¶ 26 The Guidelines do include a section entitled "Warning letters", which sets out a stepped process, including the statement, "[a] third letter will make you subject to termination." However, that section goes on to provide, "[r]easons for Warning Letters or *other disciplinary measures, including termination,* include but are not limited to the following: ...". (Emphasis added).

¶ 27 A plain reading of the Guidelines thus reveals the warning letter process is not exclusive of other disciplinary measures which might lead to termination. An analogy is found in *Hinson v. Cameron,* 1987 OK 49, 742 P.2d 549, 556, where the Court found, " ... the [employee] manual lists but examples of *some, although not all,* grounds for termination." (Emphasis in original).

¶ 28 There is no Guidelines promise in definite terms that warning letters would be

given before discharge. *See, Russell*, 952 P.2d at 501. In fact, there are not even vague assurances they would be so used. The Guidelines provision simply sets forth the procedure if warning letters were used as a disciplinary measure. Gablers had no implied contractual right to be given warning letters, or verbal warnings for that matter, before being discharged.

¶ 29 The Guidelines also has a "Reservation of Rights" provision which, as follows, is relevant to Gablers assertion an employment contract could be implied from oral and written promises by Holder:

> ... Irrespective of any statement contained herein or in any other document or statement issued by the company or any of its representatives, your employment is not guaranteed for any length of time with or without cause. No employee other than the President has the authority to enter into any contrary agreement.

¶ 30 In *Hayes*, 905 P.2d at 784, the Supreme Court, quoting from *Hinson*, at 554, set out the following factors to evaluate whether an implied contract right to job security exists—[a] evidence of some separate consideration beyond the employee's services to support the implied term, [b] longevity of employment, [c] employer handbooks and policy manuals, [d] detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices, and [e] promotions and commendations.

¶ 31 We have considered the Guidelines and found no definite promises upon which Gablers could rely to support their assertion of implied employment contracts. With respect to the other factors, Gablers [1]asserted they had been required to make specific promises they would continue employment with H & S on a long term basis, [2] noted the tenure of their employment, [3] argued Darrell Gabler had passed up other business and economic opportunities based upon the oral and written assurances of long-term employment with H & S, and [4] pointed out Kathern Gabler had received a commendation for her performance, as well as a significant salary and bonus increase, just months before her discharge.

¶ 32 The *Hayes* Court, at 784, when considering the employee's alleged proof in support of an implied employment contract, stated:

> ..., the claim of entitlement to continued employment or job security must be reasonable under an objective standard, not merely the subjective belief of the employee. Secondly that an employee has recently been promoted is insufficient alone to support a claim to continued employment. It must be coupled with definite statements by the employer sufficient to substantively restrict the reasons the employer might terminate an employee.

¶ 33 The *Hayes* Court further noted oral assurances the employee could continue as long as his performance was satisfactory was insufficient to imply a contract "whether or not Hayes detrimentally relied on the purported assurances, because such oral assurances place no substantive restrictions on the reasons the employer may terminate."

¶ 34 The only evidentiary materials Gablers attached in support of their opposition to the motion to dismiss are an August 8, 1998, memorandum from Holder to Gablers, and a February 20, 1999, memorandum from Holder to Kathern Gabler. There is nothing of record, other than Gablers' assertions, to support any oral promises of continued employment or any detrimental reliance on the alleged promises.

¶ 35 The 1998 memorandum discusses a number of subjects which had obviously been raised before, and goes on to state, in pertinent part:

> ..., you both know that you are an integral part of our team. As such, I need to be able to depend on you both staying as a team yourself.... I will not do anything more regarding the potential acquisition unless I have commitments from you both that such things as the blowup while I was gone ... will not re-occur.... We have so much opportunity for our Company, ..., but nothing happens until I get a full, no look back commitment from you 2, Dustin, and Bob for each of your responsibilities.

¶ 36 Reading the 1998 memorandum as a whole, we do not find it contains "definite statements" by Holder which would "substantively restrict the reasons" H & S might discharge Gablers. *Hayes,* 905 P.2d at 784. It certainly asks for commitments from Gablers as to their professional responsibilities, and personal lives, but it could not be reasonably read to restrict H & S's discretion in their discharge. In fact, the memorandum could more easily be read to be a warning regarding the detrimental effect their conduct could have on the company.

¶ 37 The 1999 memorandum to Kathern Gabler is no more persuasive with respect to implication of employment security. That memorandum notes increased responsibilities for her department, compliments her on her work and attitude, and advises her of a raise in compensation. The memorandum concludes by stating: "I believe that your department will, again, be a very important element in the growth of this company and we want you to be an integral part of that growth."

¶ 38 As with the previous memorandum, the 1999 memorandum contains no definite statement as to any term of employment, nor does it suggest that H & S will somehow be restricted in discharging Kathern Gabler. It is an insufficient basis on which to take Gablers claim out of an employment-at-will posture. The trial court did not err in holding Gablers could not establish a claim for breach of contract.

## PUBLIC POLICY TORT EXCEPTION TO EMPLOYMENT–AT–WILL

¶ 39 Gablers alleged as an alternative theory, assuming they were determined to be employees-at-will, that they were discharged in violation of the public policy of Oklahoma. This allegation is based factually on two sets of circumstances involving Todd that Darrell Gabler allegedly reported to Holder.

¶ 40 The first was that Todd had directed Darrell Gabler to reproduce University of Tulsa parking passes, which Darrell Gabler thought was illegal and refused to do. The second was that Todd had told Darrell Gabler that he had kept two sets of financial records for the business Todd merged with H & S. Darrell Gabler was concerned Todd would do the same at H & S, with intent to use one for tax authorities and the other for the franchiser. Gablers allege Darrell Gabler was discharged because he refused to participate in the foregoing acts, and Kathern Gabler was discharged "based solely on her status as wife of Mr. Gabler which infringes on Mrs. Gabler's constitutional rights and is clearly in violation of public policy."

¶ 41 Gablers contend H & S, Holder and Todd should be liable under the *Burk* public policy tort exception to the terminable-at-will rule. Employers may be so liable "in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." *Burk,* 770 P.2d at 28. The question of whether a discernible public policy is implicated by the discharge is initially one for the court. *Hayes,* 905 P.2d at 785.

¶ 42 The public policy exception applies "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an action consistent with a clear and compelling public policy." *Burk,* 770 P.2d at 29. Gablers factual assertions would appear to fall within both classifications.

¶ 43 Darrell Gabler asserts he refused Todd's direction to reproduce University of Tulsa parking passes without the university's authorization because he believed it was illegal. The *Hayes* Court, at 789, citing to several other decisions, recognized a *Burk* tort has been sanctioned where the discharge was claimed to have been motivated by the employee's refusal to commit a crime.

¶ 44 The *Hayes* Court contrasted that motive to the allegations there, where the employee contended he was discharged because he had reported suspected embezzlement to his supervisor. The Court explained loyalty to the employer's private and proprietary interests did not sufficiently impact any public policy subject to protection under *Burk.* The present case is distinguishable because here, Darrell Gabler could reasonably have believed unauthorized reproduction of the

parking passes would subject him to criminal punishment. *See, e.g.,* 21 O.S.1991 § 1541.1.

¶ 45 H & S could not condition employment upon Darrell Gabler's agreement to violate criminal law without being subject to a tortious claim of wrongful discharge in violation of public policy. *Hayes,* at 789. The trial court erred in dismissing his wrongful discharge claim against H & S, Holder and Todd based on refusal to copy the parking passes.

¶ 46 Similarly, in reporting his concern about Todd's keeping two sets of corporate records Darrell Gabler could be found to be seeking to protect his own interests. The *Hayes* Court held reporting embezzlement by a co-employee was not protected because the wrong was against the private interests of the employer, rather than termination where the employee was acting to vindicate his or her own interests. *Hayes,* at 786. Even concurring in falsification of corporate records may make a corporate officer criminally liable. 21 O.S.1991 §§ 1635, 1636. At the time he was discharged, Darrell Gabler was a vice-president of H & S. His action in reporting the dual record keeping was protected under the *Burk* rule.

¶ 47 Kathern Gabler, however, did not establish the same rights to a *Burk* claim. She was not asked to violate any laws, nor was she a corporate officer. She has failed to establish how she could be legally implicated in the situation under which her husband claims the right to a *Burk* tort claim. Rather, she asserts a right under *Burk* merely because her discharge was "based solely on her status as wife of Mr. Gabler which infringes on [her] constitutional rights and is clearly in violation of public policy."

¶ 48 It is not sufficient to expound a public policy. One must show the propounded public policy is "articulated by constitutional, statutory or decisional law." *Burk,* 770 P.2d at 28. While it may be morally suspect to discharge an employee based solely on a familial relationship, we are unaware of any public policy articulated by constitutional, statutory, or decisional law that protects an employee from discharge for that reason. The trial court did not err in dismissing Kathern Gabler's *Burk* claim.

## TORTIOUS INTERFERENCE WITH PRESENT AND PROSPECTIVE BUSINESS RELATIONS

¶ 49 The elements of malicious interference with contract or business relations are:

1. That the plaintiff had a business or contractual right with which there was interference.

2. That the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable.

3. That damage was proximately sustained as a result of the complained of interference.

*Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 1996 OK 121, 932 P.2d 1091.

¶ 50 Gablers claim of tortious interference with present business relations relies on their assertion of an enforceable implied contract of employment with H & S. First, we have found Gablers did not establish they had any contractual rights of employment. However, even if they had established such employment security, they could not prevail on this claim because the business relationship allegedly interfered with must be with a third party. *Navistar Intern. Transp. Corp. v. Vernon Klein Truck & Equip.,* 1994 OK CIV APP 168, 919 P.2d 443. *See also,* Restatement (Second) of Torts § 766.

¶ 51 Gablers also complain they were forced to pass up "other business and economic opportunities" because they were required to make specific promises of a long-term employment commitment to H & S. Presuming Gablers made such promise, and there is nothing to show they did, they have failed to show how any action by H & S, Holder or Todd was unjustified, malicious or wrongful. Additionally, as to both present and prospective business relations, they have failed to establish the purported economic relationship would have been achieved.

¶ 52 In *Crystal Gas Co. v. Oklahoma Natural Gas Co.,* 1974 OK 34, 529 P.2d 987, the

Supreme Court found the evidence was insufficient to support an inference the plaintiff would have entered into contracts to sell gas if defendants had not made the statements attributed to them. The Court adopted the following rule from 45 Am.Jur.2d, Interference, § 6:

> ... Where there is no existing contract, as in the tort of interference with business relations, the plaintiff must show either that prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof.

¶ 53 We have nothing but the barest of allegations that Gablers might have achieved any economic advantage if not for alleged interference by H & S, Holder or Todd. This is certainly insufficient to show reversible error. A similar deficit of facts is evident with respect to Gablers contention that a "non-compete contract", which they allege Darrell Gabler was required to sign, prevented him from taking "advantage of his expertise or gain employment at a salary and benefits level anywhere near what he had attained at H & S."

¶ 54 The non-compete contract pertained to Darrell Gabler only and Gablers have not established even reasonable assurance he would have achieved the economic advantage alleged if there were no non-compete contract. Gablers go on to assert unlawful interference is established because the non-compete contract is in violation of statutory and common law, citing 15 O.S.1991 § 217 and *Key Temporary Personnel, Inc. v. Cox,* 1994 OK CIV APP 123, 884 P.2d 1213. Once more, Gablers rely solely on their bare allegations.

¶ 55 The *Cox* Court specifically recognized § 217 prohibits only those contracts in *unreasonable* restraint of trade. *Tatum v. Colonial Life & Accident Ins. Co,* 1970 OK 27, 465 P.2d 448; *Bayly, Martin & Fay, Inc. v. Pickard,* 1989 OK 122, 780 P.2d 1168. Section 217 is not an absolute prohibition of all restrictions of trade: a restriction's enforceability is determined by weighing its reasonableness. *Bayly,* at 1172. Gablers have not provided any facts by which the reasonableness of the non-compete contract may be determined. It was their burden to do so.

¶ 56 The trial court did not err in dismissing Gablers' claims based on interference with business relations.

## VIOLATIONS OF THE OKLAHOMA GENERAL CORPORATION ACT

¶ 57 Darrell Gabler's allegations of violation of the General Corporation Act, 18 O.S.1991 § 1001 *et seq.*, regard [1] forced sale of his shares in H & S, and [2] Holder and Todd, on behalf of H & S, doing "an economically substantial amount of printing and/or imaging for third parties without seeking, and specifically waiving, compensation ...."

¶ 58 Darrell Gabler alleges he was told by Holder that Holder had a right to demand repurchase of Gabler's five percent of H & S's shares upon Gabler's "voluntary or involuntary termination from H & S." Darrell Gabler argues, however, that neither the purchase agreement, the H & S by-laws, nor the stock certificate support such right. He submitted copies of the agreement, the stock certificate and Holder's check for repurchase, as evidentiary material to support his argument. There is, however, no copy of the by-laws, nor did he support any of his allegations by affidavit.

¶ 59 While the materials Darrell Gabler did submit do not reflect a repurchase right, as with the joint venture allegations above we would be left to speculate as to whether the right exists elsewhere. As we noted in regards to that allegation, the ruling on summary judgment must be based on the record actually presented, and Gablers may not rely on the allegations of their pleadings to defeat a motion for summary judgment.

¶ 60 Similarly, there is no evidentiary materials to support Darrell Gabler's allegations that [a] waiver of compensation for work done for third parties deprived him of past dividends on his H & S shares and reduced his commissions based on gross revenues, or [b] forced sale of his H & S shares deprived him of future dividends. The trial court did

not err in dismissing this claim, or in denying Gabler's motion to reconsider the claim.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

¶ 61 Gablers alleged that after Darrell Gabler refused to copy the parking passes and reported the dual books to Holder, he was subjected to "verbal and mental abuse by defendant Todd in front of Mr. Gabler's subordinates on an on-going basis". This alleged abuse "consisted of unilateral yelling and screaming by Todd, . . . shouting of profanities and vulgarities directed at plaintiffs which were heard by the majority, if not all, of H & S employees." It is Gablers' "reasonable belief"that Todd's hostility was "condoned, if not encouraged, by Holder."

¶ 62 As before, Gablers offered no evidentiary material to support these allegations, but the alleged facts would, in any event, be insufficient to support this claim. In *Brock v. Thompson*, 1997 OK 127, 948 P.2d 279, our Supreme Court set out the following criteria for consideration of intentional infliction of emotional distress claims:

> An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress. It is the trial court's responsibility initially to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the § 46 [Restatement (Second) of Torts] standards. Conduct which, though unreasonable, is neither "beyond all possible bounds of decency" in the setting in which it occurred, nor is one that can be "regarded as utterly intolerable in a civilized community" falls short of having actionable quality. (Citations omitted).

¶ 63 Comment d to § 46 of the Restatement also provides as guidance that " . . . liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Gablers do not cite any legal authority which would support an intentional infliction of emotional distress claim under the facts presented here. With one exception the authorities they do cite find such a claim would *not* lie. The exception, *Bennett v. City National Bank and Trust Co.*, 1975 OK CIV APP 71, 549 P.2d 393, deals with the issue of evidence required to prove mental anguish, and recognizes the tort of intentional infliction of emotional distress only as dicta. In *Bennett*, the plaintiff complained of continuing harassment by a bank over debts owed by her son.

¶ 64 Contrary to Gablers' contentions, our appellate courts have consistently found employment related facts similar to those here do not meet the § 46 criteria. *See, e.g., Eddy v. Brown*, 1986 OK 3, 715 P.2d 74(Among other things, supervisor and foreman mimicked and ridiculed plaintiff in workplace); *Anderson v. Oklahoma Temporary Services, Inc.*, 1996 OK CIV APP 90, 925 P.2d 574(Among other things, supervisor made lewd remarks about plaintiff and embarrassed plaintiff by discussing her faults while with co-workers); and *Mirzaie v. Smith Cogeneration, Inc.*, 1998 OK CIV APP 123, 962 P.2d 678(Employer, among other things, loudly berated plaintiff in workplace and made derogatory sexual comments about plaintiff's fiancee.) *See also, Merrick v. Northern Natural Gas Co.*, 911 F.2d 426 (10th Cir.1990)(Supervisor yelled at, cursed, and harshly criticized plaintiff with summary judgment for employer affirmed.)

## CONCLUSION

¶ 65 That portion of the trial court's order dismissing Darrell Gabler's claim for wrongful termination is REVERSED and the trial court is instructed to proceed with that claim on REMAND. The remaining portions of the trial court's orders dismissing Gablers' claims and denying Gablers' motions to reconsider are AFFIRMED.

¶ 66 ADAMS, J., and JOPLIN, J., concur.