2002 OK CIV APP 77

Ron CRAIN, Plaintiff/Appellant,

v.

NATIONAL AMERICAN INSURANCE COMPANY, an Oklahoma corporation, and Chandler (U.S.A.), Inc., an Oklahoma corporation, Defendants/Appellees.

No. 96,370.

Court of Civil Appeals of Oklahoma, Division No. 2.

July 9, 2002.

ing party's favor, although a verdict has been found against the moving party, ..."

⚖30(1.10)

Jeff A. Lee, Lee & Freedman, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Michael L. Darrah, Hilary S. Allen, Durbin, Larimore & Bialick, Oklahoma City, OK, for Defendants/Appellees.

Opinion by KEITH RAPP, Judge.

¶ 1 Trial court plaintiff, Ron Crain, (Crain) appeals the trial court's order sustaining the defendants', National American Insurance Company and Chandler (USA) Inc., (collectively as NAICO) motion to dismiss for failure to state a claim for which relief can be granted.[1] This Court finds that Crain's amended petition describes conduct by NAICO which was contrary to a defined, established, and clear and compelling public policy. Crain's reporting of NAICO's conduct, if proven, falls within the limited and tightly circumscribed public policy exception to the at-will employment doctrine. The record, as it here exists, cannot determine beyond any doubt that Crain cannot prove a set of facts which would entitle him to relief. Thus, the trial court's ruling must be reversed and the matter remanded for further proceedings.

---

1. Both defendants are Oklahoma corporations.

## BACKGROUND

¶ 2 Crain was employed by NAICO as an assistant vice-president. Crain's job responsibilities included reporting the status of "estimated recoveries" on claim files and reporting this information to his supervisor. For several years, Crain monitored and reported the "estimated recoveries" status on claim files to his supervisor. In December 1999, he reported this information to an outside, independent auditor hired by NAICO upon their inquiry to him of the claim status. NAICO hired this auditor for purposes of preparing financial statements and reports to regulatory agencies, including the Oklahoma State Insurance Department.

¶ 3 On February 17, 2000, NAICO terminated Crain's employment for what NAICO refers to as "alleged budgetary reasons." Crain asserts that the actual reasons for his termination were "his continued complaints to his supervisors and others of the financial irregularity of the records of the company." Crain asserts that his complaints were of a whistleblowing nature. These complaints to his supervisor and to the outside auditors involved the financial reporting to the State Insurance Commission, as required by statute. He also alleges that he reported activities that constituted a violation of the established public policy of this State. In addition, he alleges that his discharge was retaliatory in nature because of his reports. He claims that he falls within the provisions of Oklahoma law protecting whistleblowers and that he is protected from discharge for refusing to give false information to a regulatory agency.

¶ 4 In response to Crain's Amended Petition, NAICO filed a Special Appearance and Motion to Dismiss asserting Crain failed to state a cause of action for which relief can be granted. The main thrust of its argument is that NAICO may discharge Crain, as an at-will employee, for any reason without incurring liability. NAICO also argues that Crain's specific whistleblowing activities do not fall within the public policy exception to the at-will employment termination rule as described in *Burk v. K–Mart Corp.*, 1989 OK

22, 770 P.2d 24. It also argued that under *Hayes v. Eateries, Inc.,* 1995 OK 108, 905 P.2d 778, internal whistleblowers within a business organization, in general, do not receive *Burk* protection, because as the Court pointed out in *Hayes,* only a private internal business matter is implicated.

¶ 5 The district court agreed with NAICO and granted its motion to dismiss.[2] Crain appeals.

## STANDARD OF REVIEW

¶ 6 The trial court sustained NAICO's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to 12 O.S.2001, § 2012(B)(6). The Oklahoma Supreme Court discussed the standard of review for a motion to dismiss for failure to state a claim under 12 O.S.2001, § 2012(B)(6) in *Indiana Nat'l Bank v. State Department of Human Services,* 1994 OK 98, ¶¶ 2–4, 880 P.2d 371, 375–76 (citations omitted).

> [R]eview of a trial court's dismissal for failure to state a claim upon which relief can be granted involves a *de novo* consideration ... as to whether the petition is legally sufficient....
>
> When reviewing a motion to dismiss, the court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them. 'A pleading must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle him to relief.'...
>
> Motions to dismiss are generally viewed with disfavor under this liberal standard and to withstand a motion to dismiss it is not necessary for a plaintiff to either identify a specific theory of recovery or set out the correct remedy or relief to which he/ she may be entitled. Generally, a petition may be dismissed as a matter of law for two reasons: (1) lack of any cognizable legal theory, or

(2) insufficient facts under a cognizable legal theory.

## ANALYSIS AND REVIEW

¶ 7 The question before this Court is whether the trial court erred in granting NAICO's motion to dismiss for failure to state a claim upon which relief can be granted. This Court holds the trial court erred.

¶ 8 This Court finds that Crain's first amended petition, based on the public policy exception to the at-will employment rule, may prove a set of facts that may entitle him to relief. *See Groce v. Foster,* 1994 OK 88, 880 P.2d 902.

¶ 9 In defense of the trial court's action, NAICO correctly recites the Supreme Court's holding recognized in *Burk* that an at-will employee may be discharged "for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." *Burk,* 1989 OK 22 at ¶ 5, 770 P.2d at 26.[3] However, the *Burk* Court, in clarifying the at-will employment rule, held that "the terminable-at-will doctrine is not absolute" and noted a number of limited and specific exceptions to the rule. *Id.* NAICO correctly noted the *Burk* Court did not attempt to list all the exceptions to the rule, but held that such determinations should be made on a case-by-case basis. *Id.,* 1989 OK 22 at ¶ 14, 770 P.2d at 28.

¶ 10 After *Burk,* the Supreme Court continued to recognize the existence of the limited public policy exception to the employment-at-will doctrine. *See Clinton v. State ex rel. Logan County Election Bd.,* 2001 OK 52, ¶ 6, 29 P.3d 543, 548. The *Clinton* Court, citing *Burk,* reiterated the right of "an employee [who] is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy," to bring a tort claim for wrongful discharge. *Id.* However, the Supreme Court clearly held that a *Burk* tort

---

**2.** The trial court did not have the benefit of *Barker v. State Ins. Fund,* 2001 OK 94, 40 P.3d 463, prior to its ruling.

**3.** NAICO does not deny in its motion to dismiss that Crain was, while employed by NAICO, an at-will employee.

lies only where the employer's wrongful discharge of an at-will employee is for refusing to act in violation of an established and clearly-defined public policy or for performing an act consistent with such policy. *Id.* Moreover, the tort applies only to a "narrow class of cases and must be tightly circumscribed." *Id.* As stated in *Hayes v. Eateries, Inc.,* the identified "public policy must truly be public, rather than merely private or proprietary." *Hayes,* 1995 OK 108 at ¶ 24, 905 P.2d at 786.

¶ 11 In *Barker v. State Ins. Fund,* 2001 OK 94, 40 P.3d 463, the Supreme Court recently took the opportunity to clarify an apparent misunderstanding that internal whistleblowers were not part of the protected class. The Court stated: "Oklahoma law protects both internal and external reporting of whistle-blowers who establish a sufficient public policy violation from retaliatory discharge." *Id.,* 2001 OK 94 at ¶ 16, 40 P.3d at 468.

██ ¶ 12 Thus, Crain must show that NAICO violated an established and well-defined public policy by discharging him. *Barker,* 2001 OK 94, 40 P.3d at 468. The task is to decide "between claims that genuinely involve the mandates of public policy that are actionable and ordinary disputes between employee and employer that are not." *Id.,* 2001 OK 94 at ¶ 17, 40 P.3d at 469. According to the *Barker* Court, the public policy may be grounded in a statute or employee actions, such as reporting fraudulent activity or criminal misuse of funds. *Id.,* 2001 OK 94 at ¶¶ 23–24, 40 P.3d at 469–70.

██ ¶ 13 Therefore, the basic principle that an employer may discharge an at-will employee without incurring liability still applies, unless it can be established that an employee's action lies within the *Burk* public policy exception. As stated in *Burk,* the question here is whether Crain's conduct constituted an act "consistent with a clear and compelling public policy."

¶ 14 The record indicates Crain was charged with the reporting of the "estimated recoveries" on claims which, in turn, could adversely effect an insurance company's financial status. Apparently, Crain's difficulty

arose in his reporting alleged inaccuracies of these recoveries to the outside auditing company hired by NAICO when questioned by the auditors. He asserts he was required under 36 O.S. Supp.2000, § 311.1 and 36 O.S.1991, § 1505 to provide accurate and truthful information to the outside auditors to assist the auditors' determination of NAICO's financial stability, and that his failure to do so could have lead to a criminal charge against him.[4]

¶ 15 NAICO asserts Crain does not qualify for the *Burk* exception based on *Richmond v. ONEOK, Inc.,* 120 F.3d 205 (10th Cir.1997) and *Hayes.* In *Richmond,* the plaintiff reported to the ONEOK personnel department a dispute she had with her supervisor regarding overtime pay and illegal and unethical conduct her supervisor had committed. The conduct concerned the fact that the plaintiff had seen her supervisor's 1993 federal income tax return, which did not reflect any income other than his salary earned at ONEOK. The court rejected plaintiff's claim that Oklahoma law provides an exception to at-will employment on the basis of reporting this type of illegal and unethical activity.

¶ 16 It is readily apparent that the facts of *Richmond,* and the nature of the whistleblowing activities there, are distinguishable from the present case. In *Richmond,* the illegal and unethical conduct bore no relation to ONEOK's responsibilities to its customers or the supervisor's job-related duties. The conduct concerned only the supervisor's personal criminal liabilities and individual risks associated with accurately reporting one's income taxes. The activity was of a personal rather than public nature.

¶ 17 NAICO has cited no cases relative to the public policy exception to employment at-will termination within the insurance industry in support of its position. This Court must thus consider the facts in the regulatory context, and must do so cautiously. *Burk,* 1989 OK 22 at ¶ 16, 770 P.2d at 29.

██ ¶ 18 The Oklahoma Supreme Court considers the insurance industry to be a unique industry in that this industry, unlike

---

4. This determination is a part of a domestic insurance company's licensing requirements.

ordinary business corporations, is highly regulated by the State, as mandated by *Okla. Const.*, art. 6, § 22 (2001). *Oklahoma Benefit Life Ass'n v. Bird,* 1943 OK 103, ¶ 5, 192 Okla. 288, 135 P.2d 994, 996. Insurance companies have been placed under the general supervisory control of the State Insurance Department, and that department is charged with the execution of all laws in relation to insurance and to insurance companies doing business in the State. *Okla. Const.*, art. 6, § 22 (2001). *Bird* held that insurance companies "have come to be looked upon as at least quasi-public in nature, subject to state control for the general benefit of not only the policyholders but of the public." *Bird,* 1943 OK 103 at ¶ 12, 135 P.2d at 997. Further, reinforcing the importance of the State's statutory directives for the insurance industry, *Bird* concluded that the objects of insurance corporations "invest them with such a public interest that the state has placed them within the superintendence of a special department; and every consideration militates in favor of the protection which the state has thrown around these companies." *Id.,* 1943 OK 103 at ¶ 13, 135 P.2d at 997 (*citing Swan v. Mutual Reserve Fund Life Assoc.,* 155 N.Y. 9, 49 N.E. 258 (1898)). Therefore, under Oklahoma constitutional mandate, statutory law, and prior holdings, this Court must give substantial consideration to the public's protection when construing the statutes governing insurance companies.

¶ 19 Crain asserts that the financial irregularities he reported had direct bearing on the monetary amounts an insurance company must maintain in reserve, as prescribed by 36 O.S.1991, § 1505. Section 1505(B) mandates that "[a]ll life insurance companies and fraternal benefit societies shall establish and maintain mandatory securities valuation reserves in accordance with the guidelines established by the National Association of Insurance Commissioners." Moreover, the financial information concerning the amount of reserves is a factor in "any determination of the financial condition of an insurer." 36 O.S.1991, § 1505. Thus, it would be a reasonable inference that irregularities, discrepancies, or false information in the "estimated reserves" on file claims are of the nature that could involve a public policy violation by

conceivably affecting or resulting in a misrepresentation of the accurate assessment of an insurance company's financial condition.

¶ 20 Crain reported the irregularities to NAICO's outside auditor when its representatives interviewed him in December of 1999, as part of the auditing process for which it was hired. NAICO argues that it hired the auditor to ensure that it was complying with the rules and regulations of the Insurance Commission and to help it accurately prepare its financial statements. NAICO asserts that there was no public purpose served by Crain telling the auditing company that the estimated recoveries were being falsely reported. The short answer to this is that in Oklahoma, insurance companies are mandated by 36 O.S. Supp.2000, § 1452, to hire certified public accountants to audit their books. This statute specifically requires insurance companies to report "the year-to-date reserve status." The information Crain provided the auditors during their interview would be relevant to an accurate assessment of the reserve status and would be of public interest and in accord with public policy.

¶ 21 Further, both parties here agree that the auditor's report is used directly by the Insurance Commission during its examinations. The examinations by the Insurance Commission are statutorily mandated by 36 O.S. Supp.2000, § 309.2, and 36 O.S.1991, § 309.4, and rely on accurate "testimony of its officers or agents *or other persons* examined concerning [the company's] affairs." 36 O.S.1991, § 309.4 (emphasis added). Again, under the wording of the statute, Crain's testimony falls within the kind of data the examiner could appropriately consider for assessing the financial condition of the insurer. NAICO implies that the internal audit was an independent and private business decision by the company to gather financial information about its own operation, when in fact, the audit is part of a highly regulated, statutorily prescribed process—from the annual reports to the Commissioner's examinations—ensuring that the public can safely rely on the ability of insurance companies to serve its interests in time of need.

¶ 22 NAICO also mistakenly relies on *Hayes* to establish that internal whistleblowing activities are not protected by the *Burk* exception. In *Hayes*, the plaintiff, an assistant manager of a restaurant, had discovered that his manager was embezzling money from the restaurant. When Hayes informed the manager he intended to investigate and report the embezzlement further, he was fired. The *Hayes* Court concluded that plaintiff's claim did not meet the *Burk* tort criteria because the reporting of embezzlement within a private business, whether to internal or external sources, involved "merely private and proprietary interests insufficient to support a *Burk* claim." *Hayes*, 1995 OK 108 at ¶ 29, 905 P.2d at 789. The *Hayes* Court reasoned that no clear and compelling policy was involved because the embezzlement concerned only a private business matter that affected the profits of the restaurant but did not jeopardize the health, safety or welfare of the public. *Id.*, 1995 OK 108 at ¶ 27, 905 P.2d at 788. NAICO's reliance on *Hayes* is misplaced as shown herein and also by the recent decision in *Barker*. Moreover, the *Hayes* Court did distinguish this type of internal whistleblowing from the "protected 'whistleblowing' activity geared toward the good faith reporting of infractions by the employer or co-employee of rules, regulations or the law pertaining to the public health, safety or general welfare." *Id.*, 1995 OK 108 at ¶ 24, 905 P.2d at 786. Thus, *Hayes* is easily distinguishable from the case at bar.

¶ 23 Where *Hayes* involved internal whistleblower activities affecting only private and proprietary business interests, and also the plaintiff's own interests, Crain reported information for an audit conducted according to statute, which involved a well-defined public policy regulating the insurance industry. The audit was an integral part of the process by which the State maintains accountability of insurance companies so that the public can be confident that insurance companies will have the resources to uphold their part of the bargain to policyholders and the public. In short, the activity was in accord with *Bird*— part of a legitimate state-sponsored plan to preserve and protect the quasi-public interest of the insurance companies' policyholders.

¶ 24 Further, Crain asserts he is protecting a legal interest of his own by referring to the mandate of 36 O.S. Supp.2000, § .311.1(A), which states in part that "[a]ny officer, actuary, *or employee* of such insurer who causes such statement to be filed, knowing the fraudulent and materially false nature thereof, upon conviction, shall be guilty of a felony...." (Emphasis added.) Crain was a NAICO employee, an assistant vice-president, who had knowledge of irregular and false financial statements, and under the wording of this statute, he could reasonably conclude that withholding or willfully failing to provide, during an audit, the correct information of which he was privy might carry a possible criminal liability as to him.

¶ 25 The Oklahoma Court of Civil Appeals in *Gabler v. Holder and Smith, Inc.*, 2000 OK CIV APP 107, 11 P.3d 1269, drew a similar conclusion. In *Gabler*, the plaintiff discovered that the defendant kept two sets of corporate records and reported his concern that defendant used the dual set to mislead auditors. The *Gabler* Court noted that under 21 O.S.1991, §§ 1635, 1636, even concurring in falsification of corporate records may make a corporate officer criminally liable. *Id.*, at ¶ 46, 11 P.3d at 1278. Following the distinction made by the *Hayes* Court, the *Gabler* Court held that plaintiff's "action in reporting the dual record keeping was protected under the *Burk* rule," because the plaintiff was acting to vindicate his own interests. *Id.* Likewise, in the present case, Crain's reference to 36 O.S. Supp.2000, § 311.1, establishes that he also was vindicating his own interests where he could be criminally liable for not reporting financial irregularities if he knew this information could result in, or cause the filing of, false statements. According to the *Gabler* Court, this action is protected by *Burk*.

¶ 26 The Supreme Court clarified the parameters of the *Burk* tort in *Clinton*, 2001 OK 52 at ¶ 10, 29 P.3d at 543, which were then further refined in *Barker*, 2001 OK 94, 40 P.3d 463. As stated earlier, the plaintiff must "articulate an established and well defined public policy" that NAICO violated in discharging him. *Barker*, 2001 OK 94, 40 P.3d at 468.

¶ 27 This Court, in accord with *Barker*, finds that Crain's reporting of what he as-

serts was false information upon which NAICO's outside auditors may have based their annual reports of the company to the Insurance Commission is consistent with a clear and compelling public policy goal of maintaining the financial integrity of an insurance company so it can fulfill its critical function of protecting the public. The compelling nature of this policy is articulated by the specific statutes in Title 36 that closely regulate insurance companies. Because the insurance industry carries such an important public mission, Oklahoma recognized the need to regulate the State's insurance companies by constitutional provisions and establishment of the Insurance Commission to oversee the execution of the industry's state-related policy goals. These were recognized in the Supreme Court's clearly articulated decision in *Bird,* holding that insurance companies are a regulated industry under statutory control to protect the public. *Bird,* 1943 OK 103 at ¶ 12, 135 P.2d at 997.

¶ 28 Therefore, this Court holds that there does exist a specific, well-established, clear and compelling public policy defined by the Oklahoma law regulating the insurance industry. The parties agree that Crain is an at-will employee. To proceed under *Burk,* Crain must still establish before the trial court on remand that the reason for his discharge violates the identified public policy goal by his performance of an act consistent with a clear and compelling public policy as set forth in *Burk.* Moreover, given the posture of the record here, it is conceivable that Crain may be able to prove that his termination violated a public policy goal. Thus, the criteria for dismissing a case for failure to state a claim have not been met and the trial court erred in its grant of dismissal.

¶ 29 The trial court's decision is reversed and the case remanded for further proceedings.

¶ 30 REVERSED AND REMANDED WITH INSTRUCTIONS.

GOODMAN, J., concurs, and COLBERT, P.J., concurs in result.