**David TYLER, Plaintiff/Appellant,**

v.

**The ORIGINAL CHILI BOWL, INC., an Oklahoma corporation, Keebler Company, a Delaware corporation, John Welcher, Lee Shafer, John Powers, and Delpha Pitts, Defendants/Appellees.**

No. 87895.

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 24, 1997.

As Corrected Feb. 13, 1997.

Katherine T. Waller, Tulsa, for Plaintiff/Appellant.

R. Mark Solano, Tulsa, for Defendants/Appellees.

## MEMORANDUM OPINION

CARL B. JONES, Presiding Judge:

Appellant, David Tyler, was fired from his job at Original Chili Bowl, Inc. (Employer). Tyler sued Employer and the other Appellants alleging two claims: (1) wrongful termination in violation of public policy, and (2) defamation. The trial court granted Employer's motion to dismiss the first claim, and denied Tyler's motion to reconsider. Tyler dismissed the defamation claim without prejudice so he could pursue this appeal, and it is not at issue here.[1]

Tyler alleged he was fired after he repeatedly told his supervisors about violations of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the specifics of which violations he has not placed in the record),[2] and that the individual Appellees engaged in unfair labor practices in violation of § 158 of the Federal Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, when they[3] terminated him because he tried to persuade fellow workers to unionize. Tyler thus alleged that either or both of the federal acts represented a "clear mandate of public policy as articulated by constitutional, statutory or decisional law," which would support a claim for wrongful discharge under the public policy exception to the discharge at will rule enunciated in *Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (Okla. 1989). *See also List v. Anchor Paint Mfg. Co.*, 910 P.2d 1011, 1013 (Okla.1996).

Appellees moved to dismiss the claim for wrongful discharge on two grounds. First,

Appellees argued that any action involving an allegation of unfair labor practices must be heard by the National Labor Relations Board [NLRB]. Second, Appellees argued that the Food, Drug, and Cosmetic Act was not a sufficient expression of public policy to support a *Burk* claim.

 We agree that, to the extent Tyler alleged he was fired because he tried to organize his fellow employees into a union, he has alleged facts which must be decided by the National Labor Relations Board [NLRB], and so his claim of wrongful discharge must in the first instance be decided by the NLRB. "When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). *See Viestenz v. Fleming Cos.*, 681 F.2d 699, 702 (10th Cir.1982); *United Ass'n of Journeymen Local 57 v. Bechtel Power Corp.*, 834 F.2d 884, 886–87 (10th Cir. 1987).

 In his motion to reconsider, Tyler pointed out that the trial court appeared to be under the misapprehension that there was a collective bargaining agreement in place.[4] He argued that, since there was not a collective bargaining agreement, his claim of wrongful discharge for unionizing activities

---

1. Tyler commenced this case in state court, and Appellees removed it to federal court. Tyler filed a motion to remand to state court, along with an amended complaint. The federal district court granted the motion to remand, holding that Tyler had not alleged or tried to allege a cause of action under federal law. The allegations recited in this opinion are taken from Tyler's amended complaint.

2. Section 331 of the Act proscribes various acts dealing with the adulteration or misbranding of any food, drug, device, or cosmetic; § 333 provides for penalties; §§ 342 and 343, respectively, define the ways in which food may be deemed "adulterated" or "misbranded."

3. For the purposes of this opinion, we read the latter as an allegation that *Employer* fired Tyler for his union-organizing activities.

4. In its minute order granting the motion to dismiss, the trial court stated, inexplicably: "Plaintiff collective bargaining Agreement prevents an employer from terminating with Plaintiff at will, however 'any claim of wrongful discharge in violation of the Agreement must be brought on the basis of the Agreement.' 681 F.2d 699 (10th Cir.) at 701 (1982)." This appears to be simply an erroneous transcription of the following paragraph from *Viestenz:*

 "Only the collective bargaining agreement prevented Fleming from terminating Mr. Viestenz at will. [Citation omitted.] Accordingly, any claim of wrongful discharge in violation of the agreement must be brought on the basis of the agreement. [Citation.]"

 *Viestenz,* 681 F.2d at 701.

was not preempted. We do not agree. While it is true that most of the cases applying the doctrine of preemption involve matters covered under a collective bargaining agreement, the existence of such an agreement is not an essential prerequisite to the doctrine's application. In *Thayer v. McDonald*, 781 P.2d 190 (Colo.App.1989), the Colorado Court of Appeals applied the same preemption to bar a claim of wrongful discharge for union-organizing activity. That result makes sense, in our view, because § 158 does not expressly apply only when there is a collective bargaining agreement in place, but includes a proscription that employers shall not "by discrimination in regard to hire or tenure of employment or any term or condition of employment ... encourage or discourage membership in any labor organization ..." 29 U.S.C. § 158(a)(3).

We therefore hold that Tyler's claim of wrongful discharge for union-organizing activity is subject to the exclusive jurisdiction of the NLRB, and the trial court correctly dismissed that much of his *Burk* claim.

■ What remains is the question whether Tyler's claim of wrongful discharge for reporting violations of the Food, Drug and Cosmetic Act invokes a sufficiently clear mandate of public policy. The record before us does not explain why Tyler thought Employer had violated the act. His amended complaint alleged that he had repeatedly reported such violations to his supervisors. In the motion to dismiss, Appellees relied on the court's statement in *Burk* that the "public policy" exception should be narrowly circumscribed because that term is inherently vague. *Burk*, 770 P.2d at 28–29. But, the court in *Burk* also quoted with approval from *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625, 631 (1982), that violation of a clear mandate of public policy should be determined by inquiry into "whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy." *Burk*, 770 P.2d at 29.

Neither party cited authority specifically dealing with a wrongful discharge claim for reporting suspected adulteration or misbranding of food. Our research discloses that in *Balla v. Gambro, Inc.*, 203 Ill.App.3d 57, 148 Ill.Dec. 446, 560 N.E.2d 1043 (1990), the Appellate Court of Illinois considered a case in which the plaintiff alleged he had been fired for opposing the sale of defective kidney dialysis machines, which he believed to be misbranded and/or adulterated within the meaning of the Food, Drug, and Cosmetic Act. *Balla*, 148 Ill.Dec. at 448, 560 N.E.2d at 1045. In the course of its opinion, the Illinois court stated: "Public policy clearly favors the prevention of interstate and intrastate distribution of 'misbranded and/or adulterated dialyzers.' ... Moreover, 'there is no public policy more important than the one favoring effective protection of the lives and property of citizens.' [Citations omitted.]" The intermediate appellate court's opinion in *Balla* was reversed on further review by the Illinois Supreme Court because the complaining employee was an attorney acting as such. *Balla v. Gambro, Inc.*, 145 Ill.2d 492, 164 Ill.Dec. 892, 584 N.E.2d 104 (1991). In *Guy v. Travenol Labs., Inc.*, 812 F.2d 911 (4th Cir.1986), the Fourth Circuit Court of Appeals declined to countenance a wrongful discharge action when the employee alleged he had told his employer that others in the company were falsifying records about the quality and quantity of pharmaceuticals the company manufactured, and refused to falsify those records himself. The result in that case appears to have been disapproved by subsequent cases in North Carolina. *See Leach v. Northern Telecom, Inc.*, 141 F.R.D. 420, 426 n. 1 (E.D.N.C.1991) ("There can be little doubt that after *Williams [v. Hillhaven Corp.*, 91 N.C.App. 35, 370 S.E.2d 423 (1988) ] and *Coman [v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989) ] that *Guy* is no longer good law.").

We conclude that a claim of discharge which is alleged to result from reporting violations of the Food, Drug, and Cosmetic Act is sufficient to come within the public policy exception enunciated by *Burk*. To the extent that Tyler alleged his discharge was the result of telling his supervisors about such violations, we cannot conclude that he cannot state a claim for wrongful discharge

under *Burk* upon which relief can be granted.

The trial court's order dismissing Tyler's claim of wrongful discharge is affirmed in part and reversed in part; and this case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. Tyler's claim of discharge following his efforts to organize his fellow employees into a union must be heard by the NLRB; his claim of discharge after telling his supervisors about violations of the Food, Drug, and Cosmetic Act should be heard by the trial court.

AFFIRMED IN PART; REVERSED IN PART.

GARRETT, J., concurs in part and dissents in part.

ADAMS, C.J., concurs.