2008 OK 1

Chris Eugene DARROW, Plaintiff/Appellant,

v.

INTEGRIS HEALTH, INC., Defendant/Appellee.

No. 103,281.

Supreme Court of Oklahoma.

Jan. 15, 2008.

Jana B. Leonard, Shannon C. Smith, Leonard & Associates, P.L.L.C., Oklahoma City, OK, for Appellant.

Leonard Court, Courtney Warmington, Crowe & Dunlevy, P.C., Oklahoma City, OK, for Appellee.[1]

OPALA, J.

¶ 1 The question presented is whether the Court of Civil Appeals (COCA) erred when it affirmed the trial judge's decision that granted appellee's (Integris Health, Inc.) motion to dismiss the action for failure to state a claim upon which relief can be granted?[2] We answer in the affirmative.

## I.

## THE ANATOMY OF LITIGATION

¶ 2 Chris Eugene Darrow (Darrow) brought suit against his former employer Integris Health, Inc. (Integris),[3] a home health-care agency, for wrongful termination based on the public-policy exception to the at-will employment rule. His petition states he worked for Integris for approximately eight (8) years before he was dismissed on or about 7 March 2005. According to Darrow, he originally worked as a home health aide, then did data entry and eventually progress-ed to the positions of administrative assistant and administrative coordinator. He described his duties as those of providing advanced secretarial and administrative support for various departments and auditing all billing activities associated with computer input for proper customer invoicing. **This included billing for Medicare reimbursement.** His job was to seek payment for services provided to patients covered by Medicare, Medicaid and insurance benefits. He had to verify the accuracy of patient information that was to be submitted to payor entities.

¶ 3 On or about 2 March 2005 Darrow received an e-mail from the clinical manager of Samaritan Home Based Care.[4] It notified him of the death of an Integris patient and three (3) family members as a result of a home fire. Because Darrow was aware that some of the equipment used in home health care posed an increased risk of fire, he responded to the e-mail.

¶ 4 That very day Darrow received conflicting information concerning the patient's age. Because age discrepancies can delay billing, he attempted to verify the patient's correct age by checking the source documents in the chart. In doing so, he noticed that the signature authorizing Integris' services appeared to be that of a minor grandchild of the patient who also died in the fire. According to Darrow, media reports about the fire included information inconsistent with that contained in Integris' documents. In addition to the age discrepancy, the news reports indicated the lack of smoke detectors and the use of non-breakaway security bars on windows at the patient's residence. This differed from the admitting nurse's initial

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

2. The terms of 12 O.S. Supp.2004 § 2012(B) provide in pertinent part:
Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
* * *
6. Failure to state a claim upon which relief can be granted;* * *

3. Darrow's amended petition reveals he was an employee of Samaritan Home Care in 1995. He became an employee of Integris when it acquired Samaritan Home Care in 1997.

4. Darrow's amended petition denotes the person who sent the e-mail was an employee of Samaritan Home Based Care. Because none of plaintiff's materials distinguish between the earlier-referenced Samaritan Home Care (see footnote 3) and Samaritan Home Based Care, we assume it is the same company.

evaluation of the home which noted "no discrepancies" on the patient's initial intake form.[5]

¶ 5 Darrow notified the company's Quality Assurance Supervisor about these problems. She indicated she would talk with his supervisor when the latter returned to work later that week. Darrow's employment was terminated approximately five days later for an alleged HIPAA (Health Insurance Portability and Accountability Act of 1996) violation in the course of his review of the deceased patient's chart.[6]

¶ 6 Darrow filed an amended petition[7] urging his dismissal was retaliatory, and asserted his right to relief in accordance with the public-policy exception to the at-will employment doctrine established in *Burk v. K–Mart Corp.*[8] Integris filed a motion to dismiss Darrow's amended petition for failure to state a claim upon which relief can be granted.[9] The trial court sustained this motion. COCA affirmed the trial judge's decision. It ruled the petition presented no set of facts which would entitle Darrow to relief because (1) he has not sufficiently identified an Oklahoma law that makes an alleged violation of the federal Medicare Act a breach of this

state's public policy and (2) his reports implicating patient safety dealt with loyalty to his employer which involved merely the latter's **private and proprietary interests** that do not support a *Burk* claim.

## II.

### Standard of Review

¶ 7 In reviewing a nisi prius disposition by dismissal, this court examines the issues *de novo*.[10] Motions to dismiss are generally viewed with disfavor.[11] The purpose of a motion to dismiss is to test the law that governs the claim in litigation, not the underlying facts.[12] A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief.[13] When considering a defendant's quest for dismissal, the court must take as true all of the challenged pleading's allegations together with all reasonable inferences that may be drawn from them.[14] A plaintiff is required neither to identify a specific theory of recovery nor to set out the correct remedy or relief to which he may be

5. The admitting nurse's assessment of "no discrepancies" meant there were no safety concerns in the home such as a lack of smoke detectors or the use of non-breakaway security bars.

6. Darrow's supervisor was aware of the former's reports. Plaintiff's amended petition, pgs. 4–5.

7. The trial judge granted Integris' motion to dismiss the first petition for failure to state a cause upon which relief can be granted, but gave Darrow leave to amend that petition.

8. *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24, recognized an actionable common-law tort for an at-will employee's discharge in contravention of a clear mandate of public policy.

9. For the terms of 12 O.S. Supp.2004 § 2012(B) see *supra* note 2.

10. *Lockhart v. Loosen*, 1997 OK 103, ¶ 4, 943 P.2d 1074, 1077; *Washington v. State ex rel. Department of Corrections*, 1996 OK 139, ¶ 7, 915 P.2d 359, 361; *Indiana National Bank v. State Department of Human Services*, 1994 OK 98, ¶ 2, 880 P.2d 371, 375.

11. *Lockhart, supra* note 10, at ¶ 5, at 1078; *Indiana National Bank, supra* note 10, at ¶ 4, at 375.

12. *Zaharias v. Gammill*, 1992 OK 149, ¶ 6, 844 P.2d 137, 138.

13. *A–Plus Janitorial & Carpet Cleaning v. The Employers' Workers' Compensation Association*, 1997 OK 37, ¶ 9, 936 P.2d 916, 922; *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.*, 1997 OK 36, ¶ 9, 946 P.2d 662, 665; *Delbrel v. Doenges Bros. Ford*, 1996 OK 36, ¶ 3, 913 P.2d 1318, 1320; *Washington, supra* note 10, at ¶ 7, at 361.

For the pertinent terms of 12 O.S. Supp.2004 § 2012(B) see *supra* note 2.
"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Groce v. Foster*, 1994 OK 88, ¶ 12, 880 P.2d 902, 906; *Dyke v. Saint Francis Hospital, Inc.*, 1993 OK 114, ¶ 7, 861 P.2d 295, 298; *Frazier v. Bryan Memorial Hosp. Authority*, 1989 OK 73, ¶ 13, 775 P.2d 281, 287.

14. *Great Plains Federal Savings and Loan Association v. Dabney*, 1993 OK 4, ¶ 2, n. 3, 846 P.2d 1088, 1090 n. 3.

entitled.[15] If relief is possible under any set of facts which can be established and is consistent with the allegations, a motion to dismiss should be denied.[16] A petition can generally be dismissed **only** for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory.[17] This recapitulation of the standards that govern when a case is decided on a motion to dismiss guides our review in this case.[18]

## III.

## A.

### The Parties' Certiorari Arguments

¶ 8 According to Darrow's certiorari petition, his internal reports to personnel about Integris' record discrepancies dealing with allegations of falsification of documents submitted to Medicare, possible Medicare fraud and concerns about patient safety are violations of public policy and hence are actionable in accordance with *Burk*[19] and its progeny.[20] Darrow bases his claims on (1) three federal statutes (the False Claims Act, 31 U.S.C. § 3730; the False Statements Act, 18 U.S.C. § 1001; as well as the criminal Medicare and Medicaid anti-fraud and abuse provision in 42 U.S.C. § 1320a–7)[21]; (2) several state statutes [including 21 O.S. § 1635 that deals with falsification of papers; the provisions of 21 O.S. § 455(A) that address prevention of witness testimony; and the terms of 63 O.S.2001 § 1960 *et seq.* (addressing health care issues) ] and (3) judicial decisions (dealing with an implied obligation or duty to exercise ordinary care in the delivery of professional services). Integris continues to urge (1) Darrow has failed to identify any breach of actionable Oklahoma public policy on which his claim may be bottomed, (2) claims he may have identified as based on

---

**15.** *Dabney, supra* note 14, at ¶ 3, at 1096 (Opala, J., concurring).

**16.** *Lockhart, supra* note 10, at ¶ 4, at 1077; *Indiana National Bank, supra* note 10, at ¶ 4, at 376.

**17.** *Lockhart, supra* note 10, at ¶ 5, at 1078; *Indiana National Bank, supra* note 10, at ¶ 4, at 375.

Integris asserts that Darrow does not allege facts that support either a claim of Medicare fraud or which implicate an Oklahoma public policy. (*Integris*' supplemental brief at p. 2 and motion to dismiss at p. 2) Under our notice pleading regime a motion to dismiss for failure to state a claim upon which relief can be granted replaces the Field Code version of the general demurrer to the pleadings. Committee Comment to 12 O.S. Supp.2004 § 2012(B). "A pleading ... shall contain ... [a] short and plain statement of the claim showing that the pleader is entitled to relief; and ... [a] demand for judgment for the relief to which he deems himself entitled." 12 O.S.2001 § 2008(A)(1)(2). A motion to dismiss for failure to state facts upon which relief may be granted tests a pleading's sufficiency to support a legally cognizable claim; a motion for summary judgment—a challenge to underlying pleaded and unpleaded facts—tenders the case for adjudication upon application of law to uncontroverted facts, whether pleaded or not, which on all material issues, support but a single inference in favor of the movant. *Hulsey v. Mid–America Preferred Insurance Co.*, 1989 OK 107, ¶ 8 n. 15, 777 P.2d 932, 936 n. 15. Undisputed facts from which opposing inferences may be drawn present a disputed fact issue for trial. *Hulsey, supra.*

We find Darrow's amended petition is protected from dismissal by pleading sufficient facts within the meaning of notice-pleading requirements. *Crain v. National American Insurance Co., infra* note 38, at ¶ 7, at 1038. Darrow's amended petition discloses (1) Integris' documents that were handled by the petitioner contained unreliable entries and (2) actions by Integris that are contrary to the spirit of requirements imposed by a statute later identified as the Home Care Act, 63 O.S.2001 § 1–1960 *et seq., infra* note 48. **If Integris desires to elicit additional facts or wishes to challenge the claim for lack of sufficient facts to support it, it should resort to discovery or seek summary judgment.**

**18.** *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887, 894.

**19.** *Burk, supra* note 8.

**20.** Darrow urges his reporting of discrepancies to the company's quality assurance supervisor was (a) an important public obligation, (b) an exercise of a legal right or interest, (c) an act that public policy would encourage and (d) an act that exposed wrongdoing on the part of his employer. These are four nationally-recognized classifications for public-policy exceptions to the at-will employment rule foreshadowed in *Hinson v. Cameron*, 1987 OK 49, 742 P.2d 549.

**21.** Medicare fraud is a violation of the False Claims Act, 31 U.S.C. § 3730; the False Statements Act, 18 U.S.C. § 1001; and the Medicare and Medicaid anti-fraud and abuse provision in 42 U.S.C. § 1320a–7.

breached public policy describe merely a private rather than a public matter, and (3) the public policy that is relied on must touch the employment relationship.

## B.

### Burk's Modification of the Common Law

¶ 9 Oklahoma adheres to the so-called American employment-at-will doctrine.[22] Employers are free to discharge at-will employees in good or bad faith, with or without cause. At-will employees do not have a cognizable cause of action for wrongful discharge unless the claim falls within the narrow class of complaints in which the discharge may be characterized as contrary to a clear mandate of public policy and violates some law articulated in state constitutional, statutory or decisional sources.[23] This exception was introduced into Oklahoma's legal system by Burk's singular modification of the common-law employment-at-will doctrine. The exception's application should be tightly circumscribed.[24] Circumstances in which this actionable "Burk tort" is said to arise are where an employee is discharged for (1) refusing to violate an established and well-defined public policy or (2) performing some act consistent with a clear and compelling public policy.[25] The implication of a sufficiently discernible public policy presents a question of law to be resolved either at nisi prius or ultimately by an appellate court.[26]

## C.

### A Public–Policy Exception to the At–Will Employment Doctrine May Not Rest Solely on Federal Law

¶ 10 The public-policy exception to the at-will employment rule is not easily applied. This is so because (1) a wide variety of scenarios potentially comprise this common-law tort[27] and (2) it is not always easy to identify **what is a specific, well-established, clear and compelling public policy.**[28] We have stated an employer's violation of a state-declared public policy is the fundamental predicate for a Burk tort.[29] The first step in a Burk analysis is to identify the offending employer's conduct in terms of its conformity to, or discord with, Oklahoma's public policy.

¶ 11 Darrow's claim is that he was wrongfully discharged for reporting possible Medicare fraud. He urges three federal statutes (the False Claims Act, 31 U.S.C. § 3730; the False Statements Act, 18 U.S.C. § 1001; as well as the Medicare and Medicaid anti-fraud and abuse provision in 42 U.S.C. § 1320a–7) make his dismissal wrongful for reporting Medicare fraud. Darrow relies on *Tyler v.*

22. The American employment-at-will doctrine holds that an employment contract for an indefinite term may, at the will of either party, be terminated without contractual liability. *Hinson, supra* note 20, at ¶ 9, at 552; *Gilmore v. Enogex, Inc.,* 1994 OK 76, ¶ 6, 878 P.2d 360, 362–63.

23. *Burk, supra* note 8, at ¶ 17, at 28; *Gilmore, supra* note 22, at ¶ 11, at 364.

24. *Burk, supra* note 8, at ¶ 18, at 28–29.

25. *Burk, supra* note 8, at ¶ 19, at 29.

26. *Hayes v. Eateries, Inc.,* 1995 OK 108, ¶ 19, 905 P.2d 778, 785; *Shero v. Grand Savings Bank,* 2007 OK 24, ¶ 5, 161 P.3d 298, 300 (citing *Pearson v. Hope Lumber & Supply Co.,* 1991 OK 112, ¶ 4, 820 P.2d 443, 444).

27. Oklahoma has recognized various types of claims that fall within the public-policy exception to the at-will employment rule. These include: *Vannerson v. University of Oklahoma,* 1989 OK 125, 784 P.2d 1053 (a *Burk* claim lies where an employee alleges he was discharged for going over his supervisor's head when he complained of an illegal disposition of state property); *Todd v. Frank's Tong Service, Inc.,* 1989 OK 121, 784 P.2d 47 (a truck driver's allegation that he was discharged for refusing to operate motor vehicles which did not meet statutory brake and light requirements was sufficient to state an action for wrongful termination in accordance with *Burk*); and *Silver v. CPC–Sherwood Manor, Inc.,* 2004 OK 1, 84 P.3d 728 (a *Burk* claim will lie against an employer for allegedly discharging a nursing-home employee who refused to continue to perform his duties as a cook. The claim was based on employer's violation of Oklahoma's public health code provisions that deal with adulterated food).

28. "In light of the vague meaning of the term public policy ..." *Burk, supra* note 8, at ¶ 18, at 28–29; *Barker v. State Insurance Fund,* 2001 OK 94, ¶ 17, 40 P.3d 463, 468–69.

29. *Clinton v. State of Oklahoma, ex rel. Logan County Election Board,* 2001 OK 52, ¶ 10, 29 P.3d 543, 546.

*Original Chili Bowl, Inc.,* 1997 OK CIV APP 3, 934 P.2d 1106, for support of his position that the breach of a federal statute may serve as a basis for a public-policy breach in tort.[30] *Tyler,* a Court of Civil Appeals decision, teaches that a discharge—which is alleged to result from reporting violations of the federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 *et seq.*—falls within the parameters enunciated by *Burk.* Integris counters the policy must be grounded in Oklahoma law, because a federal statute cannot serve as a pronouncement of Oklahoma's public policy. Inasmuch as extant jurisprudence reveals the presence of some textual expressions that may cloud this issue—whether a federal statute, standing alone, may provide a sufficient policy basis upon which to rest a *Burk* tort—we now take the opportunity to eliminate the confusion whose presence distorts the *Burk* requirements.

¶ 12 Seven months after *Tyler* was published the court again dealt with the issue before us—whether a federal statute may constitute a sufficient basis for an Oklahoma public-policy tort—when it answered a question certified to it by a United States District Court. That case, *Griffin v. Mullinix,*[31] teaches the federal OSHA statute, in itself, may not stand as a statement of Oklahoma public policy. The court there was persuaded by the defendant's argument—"that a federal statute cannot serve as an articulation of Oklahoma public policy, absent [support in] a specific Oklahoma decision, [state] statute or [state] constitutional provision." This was also the teaching of the Tenth Circuit in *McKenzie v. Renberg's Inc.*[32] Four years later in *Shaw v. AAA Engineering and Drafting, Inc.*[33] the Tenth Circuit noted the tension between *Tyler* and *Griffin.* There the court rejected the notion that the provisions of the federal False Claims Act may afford an adequate basis for a *Burk* tort. It noted that *"[a]lthough perhaps falling short of a categorical statement that federal law can never be the basis for a claim under the public policy exception,* the *Griffin* court's statement is sufficient authority [for accepting the view] that the FCA is not a statement of a well-defined Oklahoma public policy." (emphasis supplied) In 2001, this court, speaking in *Clinton v. Logan County Election Board,* further clarified the parameters of the *Burk* tort in answer to another certified question. *Clinton* teaches the existence of a federal statutory remedy that would sufficiently protect Oklahoma's public policy precludes the creation of an independent common-law claim based on the public-policy exception to the employment-at-will rule. The court there stated that *"[w]hile a federal statute cannot by itself serve as a statement of Oklahoma policy,* a federal statutory rem-

---

**30.** *Tyler v. Original Chili Bowl, Inc.,* 1997 OK CIV APP 3, 934 P.2d 1106. Darrow asserts he had to report the discrepancies he discovered or be faced with criminal penalties based on the submission of a false claim or falsified documentation (citing *Palmer v. Brown, infra* note 42, a Kansas case; the latter jurisdiction recognizes the tort of retaliatory discharge for reporting Medicaid fraud). Darrow maintains a federal statute will provide a sufficient basis for an Oklahoma claim based on breach of public policy.

**31.** *Griffin v. Mullinix,* 1997 OK 120, 947 P.2d 177. Plaintiff in this cause urged Oklahoma's Occupational Health Act, 40 O.S.1991 § 401 *et seq.,* and the federal OSHA provisions served as a basis for his wrongful termination claim. The court answered a question certified to it by the federal district court and held that because no Oklahoma articulation of public policy exists with regard to the private employer under the Oklahoma act and the federal statute in itself does not stand as a statement of Oklahoma public policy, there was no public-policy basis upon which the plaintiff could maintain his retaliatory discharge claim.

**32.** *McKenzie v. Renberg's Inc.,* 94 F.3d 1478 (10th Cir.1996). Although the plaintiff in *McKenzie* urged the Oklahoma Protection of Labor Act, 40 O.S.1991 § 165.1, and the FLSA as the basis for her *Burk* claim—that she was discharged for reporting her concerns that the company was not properly paying overtime pay—the Tenth Circuit, exercising its pendent jurisdiction, affirmed the district court's ruling that dismissed her claim. It ruled (1) there was an absence of any clearly articulated overtime pay policy in the Oklahoma statutory scheme sufficient to support a *Burk* cause and (2) employee's claim—predicated upon an asserted public policy found in a combined regime of state and federal law—was not cognizable, noting "[t]he most she [plaintiff] can do is allege a violation of the federal FLSA."

**33.** *Shaw v. AAA Engineering & Drafting, Inc.,* 213 F.3d 519 (10th Cir.2000). Shaw teaches the False Claims Act (FCA) is not a statement of Oklahoma public policy and hence cannot serve as the basis for an employee's wrongful discharge *Burk* claim.

edy may be as effective as an Oklahoma statutory remedy in dissuading employers from discharging [at-will] employees for reasons that violate Oklahoma public policy." (emphasis supplied)

¶ 13 A close reading of *Griffin's* text reveals that, although the court's holding was properly stated in its most narrow construction, the court bottomed its decision upon two predicates. **First,** text of the court's opinion plainly reveals it *agreed* with the defendant's argument and analysis in *McKenzie v. Renberg's Inc.*—that a federal statute by itself cannot serve as an articulation of Oklahoma public policy absent a specific Oklahoma court decision, statute or constitutional provision. **Second,** it clearly expounded the doctrine that it is neither the court nor Congress but the Oklahoma legislature that is primarily vested with the responsibility of declaring the public policy of this state. Darrow's reliance on *Tyler* is hence misplaced.[34] Congressional legislation cannot *eo ipso* fashion Oklahoma's public policy.[35] *A federal statute, standing* *alone, does not articulate Oklahoma's public policy. Only a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal constitution that prescribes a norm of conduct for the state can serve as a source of Oklahoma's public policy.* Darrow's expectation that a basis for the *Burk* public-policy exception to the at-will employment rule may be supplied solely by a federal statute must be rejected.[36]

### D.

### Darrow's Reliance on his Employer's Falsification of Records Injects an Element of Public Interest Sufficient to Support a *Burk* Claim Without Contravening the Teachings of *Hayes v. Eateries, Inc.*

¶ 14 We next turn to Darrow's assertions that decisional law establishes his reports alleging Integris' (1) falsification of records[37] and (2) public-safety violations[38] afford a breach of public policy for his *Burk* claim. In affirming the nisi prius dismissal

---

**34.** Although the court in *Tyler* reveals the appellant there did not specify in the record the particular violations of the federal act, we would agree with COCA's decision insofar as it is based upon the provisions of 63 O.S.2001 § 1–1101 *et seq.*, our Public Health Code provisions dealing with adulterated food.

**35.** *"Eo ipso* is defined as '[b]y that very act.'" *Clinton, supra* note 29, at ¶ 5, at 546 (Opala, J., concurring).

**36.** Because we are not informed of any specific federal claim on which Integris places reliance, we need not address whether an adequate federal remedy would preclude the existence of a common-law tort claim here.

**37.** In support of his theory dealing with falsification of records, Darrow points to *Gabler v. Holder and Smith, Inc.*, 2000 OK CIV APP 107, 11 P.3d 1269. In *Gabler* COCA held an employee stated a claim for wrongful discharge because (1) he could have believed his unauthorized reproduction of parking passes would subject him to criminal punishment in accordance with the terms of 21 O.S.1991 § 1541.1 (obtaining property by trick or deception), and (2) his knowledge of the two sets of corporate records might be seen as concurring in falsification of records in violation of the terms of 21 O.S.1991 §§ 1635 and 1636 (dealing with corporate officers making false statements and falsifying papers). COCA emphasized Gabler, a corporate officer, was seeking to vindicate his own interests, not just those of his employer. Unlike the petitioner in *Gabler*, Darrow is merely an employee, not a corporate officer, agent, director or member.

The terms of 21 O.S.1991 § 1635 and 1636, dealt with in *Gabler*, are not applicable to Darrow's claim. Likewise the terms of § 1541.1 (obtaining property by trick or deception) would not be available as a basis for Darrow's claim. This is so because Medicare, a federal insurance program, does not fall within the statute's terms "person, firm or corporation." This provision states:

> Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any *person, firm or corporation* any money, property or valuable thing, of a value less than Five Hundred Dollars ($500.00), by means or by use of any trick or deception, or false or fraudulent representation or statement or pretense, or by any other means or instruments or device commonly called the "confidence game", or by means or use of any false or bogus checks, or by any other written or printed or engraved instrument or spurious coin, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed One Thousand Dollars ($1,000.00), or by imprisonment in the county jail for not more than one (1) year, or by both such fine and imprisonment. (emphasis supplied)

Darrow here interjects the terms of 21 O.S. 2001 § 455—which deal with preventing a witness from giving testimony—serve as a basis for his cause of action. He cites to *Mehdipour v. State*, 1998 OK CR 23, ¶ 7, 956 P.2d 911, 914–15, for the proposition that the § 455 terms apply to both those who prevent a witness from giving testimony and those who attempt to do so.

of Darrow's claim—upon the theory that he was discharged for reporting matters concerning patient safety—COCA relied on *Hayes v. Eateries, Inc.*[39] That case teaches a restaurant employee's claim of wrongful discharge for reporting a co-employee's embezzlement was rested merely on loyalty to his employer and to the latter's proprietary interests. Because the employee was acting neither to vindicate his own interests nor those of the general public he could not rely on a public-policy exception to the at-will employment rule. COCA ruled here that Darrow's actions, much like those of the em-

ployee in *Hayes*, revealed no more than loyalty to his employer and his desire to save the employer from sustaining a financial loss or being subjected to liability.

¶ 15 **We disagree with COCA's analysis and its analogy to** *Hayes.* A close reading of that decision is instructive here. The court in *Hayes* ruled that a restaurant employee's internal or external reports of a co-employee's embezzlement from his employer was neither sufficient to protect nor to assert a legal interest of his own.[40] According to the court, the employee in *Hayes* was not

---

The § 455 terms provide:

A. Every person who willfully prevents any person from giving testimony who has been duly summoned or subpoenaed or endorsed on the criminal information or juvenile petition as a witness, or who makes a report of abuse or neglect pursuant to Sections 7103 and 7104 of Title 10 of the Oklahoma Statutes or Section 10–104 of Title 43A of the Oklahoma Statutes, or who is a witness to any reported crime, or threatens or procures physical or mental harm through force or fear with the intent to prevent any witness from appearing in court to give his testimony, or to alter his testimony is, upon conviction, guilty of a felony punishable by not less than one (1) year nor more than (10) years in the State Penitentiary.

B. Every person who threatens physical harm through force or fear or causes or procures physical harm to be done to any person or harasses any person or causes a person to be harassed because of testimony given by such person in any civil or criminal trial or proceeding, or who makes a report of abuse or neglect pursuant to Sections 7103 and 7104 of Title 10 of the Oklahoma Statutes or Section 10–104 of Title 43A of the Oklahoma Statutes, is, upon conviction, guilty of a felony punishable by not less than one (1) year nor more than ten (10) years in the State Penitentiary.

The terms of § 455 are inapplicable here. Discharge of an employee may limit that individual's employment-related knowledge by eliminating one from the work situs, but it neither prevents nor attempts to prevent that person from testifying about known company practices. Section 455 cannot serve as the basis for Darrow's *Burk* claim.

38. In support of his theory dealing with public-safety violations, Darrow cites to *Crain v. National American Insurance Co.*, 2002 OK CIV APP 77, 52 P.3d 1035. *Crain* teaches regulation of the insurance industry to maintain its financial integrity in order to protect the interests of the public was a clear and compelling public policy; an employee's report of allegedly false information provided by his employer to outside auditors who might use that information in their report to the Insurance Commission stated a *Burk* claim for

wrongful discharge. Darrow relies on *Crain's* emphasis that the insurance industry is highly regulated by federal and state law. He analogizes this to the health-care business and rests his claim on the provisions of 63 O.S.2001 § 1–1960 *et seq.*, the Home Care Act.

For support of this proposition Darrow also invokes *Frank's Tong Service, Inc., supra* note 27. There 'a truck driver alleged he was fired for refusing to operate unsafe motor vehicles. In reversing the nisi prius decision that dismissed his claim for failure to state a cause of action, the court relied upon two state statutes regulating the operation of equipment on motor vehicles as an expression of the state's public policy dealing with highway safety. Darrow also cites to *Trombetta v. Detroit, Toledo & Ironton R.R. Co.*, 81 Mich.App. 489, 496, 265 N.W.2d 385, 388 (1978) (a former employee's allegation that he was discharged for his refusal to manipulate and adjust sampling results used for pollution control reports to be filed with the state was sufficient to state a claim for relief in accordance with the public-policy exception to the at-will employment rule).

Darrow further asserts that protecting the infirm is a public-policy basis for his common-law tort claim. For support he cites *Johnson v. Hillcrest Health Center, Inc.*, 2003 OK 16, ¶ 13, 70 P.3d 811, 816, and several out-of-state cases. *Johnson* teaches hospitals have an implied obligation to exercise ordinary care in the delivery of professional services to their patients, and this duty requires such care and protection to a patient as that patient's condition requires. Because of our holding we need not address this legal theory.

39. *Hayes, supra* note 26.

40. Because the petitioner in *Hayes* did not distinguish whether his reports were made to someone within the company or to an external source, the court addressed both situations. Although the court in this portion of the *Hayes's* opinion was addressing a report made to an external source about a co-employee's alleged illegal act, it held the same rationale applies to an internal report

seeking "to vindicate a public wrong where the victim of the crime could in any real or direct sense be said to be the general public, as where crimes or violation of health or safety laws are involved."[41] (emphasis supplied) *Hayes* distinguished the scenario implicated there from those in sister jurisdictions which have extended a measure of judicial protection to " 'whistleblowing' activity geared toward the good-faith reporting of infractions by the employer or co-employees of rules, regulations or the law pertaining to the **public** health, safety or general welfare." [42] According to the court, the situation in *Hayes* did not mirror **"direct interests of the general public as where the reporting involves the criminal wrongdoing of the employer or [where] a co-employee perpetrated [some act] against the interests of the general public."**[43] (emphasis supplied)

¶ 16 The court's emphasis on the distinction in *Hayes* from all those instances where "whistleblowing" activity was deemed protected has significant implications for today's case. According to *Hayes*, to distinguish whistleblowing claims that would support a viable common-law tort claim from those that would not, the public policy breached must truly impact public rather than the employer's private or simply proprietary interests.[44] We believe Darrow's claim in this case comes within the scope of protected activity that has public impact, is recognized in *Hayes* and is actionable within the *Burk* framework.[45]

¶ 17 The legislature has enacted the Home Care Act, 63 O.S.2001 § 1–1960 *et seq.*, to regulate and license the home health-care business.[46] According to the act's published statutory and historical notes, it is "[a]n Act relating to public health and safety" [47] whose terms came to be codified under Title 63. That title embraces the Oklahoma Public Health Code. In addition to home care business licensing and employee certification requirements, the legislature imposed minimum certification standards for a home care agency administrator to include "education or training which shall include ... *supervision, fiscal management, ethics, ...*" [48] (emphasis

of misdoing to company officials. *Hayes, supra* note 26, at ¶¶ 23–27, at 786–88.

**41.** *Hayes, supra* note 26, at ¶ 24, at 787.

**42.** *Hayes, supra* note 26, at ¶ 24, at 786–87. Those public-policy causes recognized by other jurisdictions and cited in *Hayes* include: *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685, 689–690 (1988) (outside reporting of medicaid fraud of employer); see also *White v. General Motors Corporation*, 908 F.2d 669, 671–672 (10th Cir.1990), cert. denied, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991) (applying Kansas law) (internal reporting to GM management of various defects in brake installations); *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980) (internal reporting geared toward employee's efforts to ensure that his employer's products complied with applicable state law relating to labeling and licensing); *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978) (internal reporting geared toward employee's efforts to require his employer, a bank, to comply with consumer credit and protection laws). *Hayes, supra.* See also *Wagner v. City of Globe*, 150 Ariz. 82, 722 P.2d 250, 256 (1986) (overruled on other grounds) (a police officer who reported another's illegal arrest and detention).

**43.** *Hayes, supra* note 26, at ¶ 24, at 787.

**44.** "These latter situations must be distinguished from those which involved merely private or proprietary interests because to support a viable tort claim the public policy must truly be public, rather than merely private or proprietary." *Hayes, supra* note 26, at ¶ 24, at 787 (citing *Wagner, supra* note 42, at 256–57).

**45.** According to Integris, the sources of public policy relied on by Darrow contain no provisions limiting the actions of an employer. Darrow's claim hence must fail because the law relied on in support of a public-policy tort must touch some aspect of the employment relationship (citing *Shero, supra* note 26, at ¶¶ 10–11, at 301–302 and *Pearson, supra* note 26, at ¶ 7, at 445). Those causes are not applicable here because we are dealing with matters of importance to the general public.

**46.** "To the extent Appellant attempts to rely on two statutes under the Oklahoma Nursing Home Act, such provisions are inapplicable since Appellant worked for INTEGRIS' home health care agency, and not a nursing facility." Integris' supplemental brief, p. 8. Although Integris denies it is subject to the provisions of the Oklahoma Nursing Home Act, 63 O.S.2001 § 1–1901 *et seq.*, its assertion does not address the applicability of the Home Care Act, 63 O.S.2001 § 1–1960 *et seq.*, to today's certiorari.

**47.** See historical and statutory notes, 63 O.S. 2001 § 1–1960 *et seq.*

**48.** The terms of 63 O.S.2001 § 1–1962a provide:
\* \* \* C. 1. In order to further ensure minimum standards for certification, the Board

supplied) This demonstrates the intent of the legislature to protect all aspects of health, safety and welfare of the aged and infirm who receive health care in their own homes. **The interests dealt with in today's case are clearly different from those considered in** *Hayes.* **This case deals not simply and purely with an employer's internal matter solely of entrepreneurial character and importance to Integris.** The fiscal integrity of home care businesses and the safety of those who have engaged these services are of solemn concern to patients, their families, the general public and to the government. Darrow's reports of record discrepancies that relate directly to patient safety or to billing practices cannot and must not be viewed as dealing merely with matters that protect the entrepreneurial interest of his employer but rather with those matters which concern and further public-interest protections.

¶ 18 Darrow's reports dealing with allegations of falsification by Integris of documents (if indeed Medicare fraud is involved) would likewise be protected activity based on the terms of 21 O.S.2001 § 1589.[49] That statute deals with false entries in books of accounts kept by corporations. **Unlike in** *Hayes,* **where the there-reported embezzlement was said to affect merely the private and proprietary interest of the restaurant owner, the victim of the crime alleged to have been committed here would be the general public.[50]** Medicare is a program paid for by the wages of working taxpayers to benefit those who are over the age of sixty-five or disabled. **That it is a federal program is of no consequence.** Providing legal recourse to an employee who asserts he was discharged for reporting violations of Oklahoma's criminal law where the public interest is so closely entwined clearly gives rise to a mandate of public policy on which a *Burk* claim may be rested.

¶ 19 Oklahoma law protects both **internal** and **external** reporting of whistleblowers who rely on an employer's public-policy violation to support an actionable employment termination.[51] Protecting purely private and proprietary interests of an employer is not a cognizable predicate for this tort.[52] Employ-

shall require a home care agency administrator to receive education or training which shall include, but not be limited to, training in administration, supervision, fiscal management, ethics, community relations, public information and human relations, concerning the issues associated with the operation of home care agencies and programs. Any person employed as an administrator after November 1, 1996, shall have completed the education or training specified by this subsection. * * *

**49.** The terms of 21 O.S.2001 § 1589 provide:
Every person who, with intent to defraud, makes any false entry, or falsely alters any entry made in any book of accounts kept by any corporation within this state, or in any book of accounts kept by any such corporation or its officers, and delivered or intended to be delivered to any person dealing with such corporation, by which any pecuniary obligation, claim or credit is, or purports to be, discharged, diminished, increased, created or in any manner affected, is guilty of forgery in the second degree.

**50.** "It is the public policy in Oklahoma and everywhere to encourage the disclosure of criminal activity, and a ruling here in accordance with the argument advanced by appellants would serve to frustrate this policy." *Lachman v. Sperry–Sun Well Surveying Co.,* 457 F.2d 850 (10th Cir.1972) (a non-disclosure clause contemplated by an otherwise proper and enforceable contract—calling for well survey results that revealed it to have deviated vertically to the extent that it was bottomed on a neighboring tract of land whose oil

and gas rights belonged to a third party—is a circumstance to cause public policy to intervene to prevent its enforcement).

"No public policy is more basic, nothing more implicit in the concept of ordered liberty ... than the enforcement of a State's criminal code." *Palmateer v. International Harvester,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981)(citing *Palko v. Connecticut* (1937), 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, 292)(an employee stated a valid claim for wrongful discharge when he was allegedly dismissed for supplying law enforcement authorities with information about a co-employee's criminal activities).

"This Court is generally free to grant corrective relief on any applicable legal theory dispositive of the case and supported by the record when the issue is one of public law." *State v. Torres,* 2004 OK 12, ¶ 7, 87 P.3d 572, 578. "[W]here questions of public policy or widespread public interest are involved an appellate court may review a cause on a theory not presented in the trial tribunal." *City of Enid v. Public Employees Relations Bd.,* 2006 OK 16, ¶ 21, 133 P.3d 281, 289 (citing *Special Indemnity Fund v. Reynolds,* 1948 OK 14, 188 P.2d 841); *Barks v. Young,* 1977 OK 81, ¶ 7, 564 P.2d 228, 229.

**51.** *Barker, supra* note 28, at ¶ 16, at 465.

**52.** *Hayes, supra* note 26, at ¶¶ 23–26, at 786–788.

Some facets of business activities that are of a purely private and entrepreneurial character

ees who report and complain of an employer's unlawful or unsafe practices and whose actions seek to further the public good by unmasking these breaches should be protected from an employer's retaliation.[53] We note that the legislature does protect state employees from retaliatory discharge for whistleblowing activity.[54] Although not applicable to today's case, the state's "Whistleblower Act," 74 O.S. Supp.2003 § 840–2.5, part of the Oklahoma Personnel Act, manifests a public policy for shielding state employees from retaliation which is in harmony with today's view that private employees should enjoy a not dissimilar quantum of protection under *Burk*.[55]

¶ 20 As a final note, we caution that today's pronouncement is not to be understood so broadly as to warrant a conclusion that any employee allegation of illegal or unsafe employer's activity will withstand scrutiny in light of *Burk*. The pervasive public interest implicated here by the alleged violations of the public health, safety, and welfare is a prominent consideration for protecting these complaints by the breach of public policy shield. **Darrow's petition is hence clearly sufficient to survive Integris' motion to dismiss.**

## IV.

## SUMMARY

¶ 21 We hold today that COCA **erred** when it affirmed the trial judge's dismissal of Darrow's amended petition. Darrow has alleged facts for which relief is legally possible because they lie within the protected workplace parameters established for a **wrongful discharge in breach of public policy.**

¶ 22 The Court of Civil Appeals' opinion that affirms the trial court's dismissal of the action for failure to state a claim upon which relief can be granted is vacated, the trial court's dismissal of the action is reversed, and the cause is remanded for further proceedings to be consistent with this pronouncement.

¶ 23 EDMONDSON, V.C.J., OPALA, KAUGER, WATT, TAYLOR, COLBERT, REIF, JJ., concur

¶ 24 WINCHESTER, C.J. and HARGRAVE, J., dissent

stand unaffected by the impact of expected conformity to a state's public-policy requirements. Because they lie outside the sphere of government-regulated conduct, they may not be brought within the ambit of a public-policy breach that gives rise to a *Burk* claim.

**53.** *Wagner, supra* note 42, at 257. We agree with those jurisdictions that extend this measure of protection to at-will employees. See *supra* note 42.

**54.** The terms of 74 O.S. Supp.2003 § 840–2.5 provide:

A. This section shall be known and may be cited as the "Whistleblower Act". The purpose of the Whistleblower Act is to encourage and protect the reporting of wrongful governmental activities and to deter retaliation against state employees for reporting those activities. No conviction of any person shall be required to afford protection for any employee under this section.
B. For purposes of this section, "agency" means any office, department, commission or institution of the state government. No officer or employee of any state agency shall prohibit or take disciplinary action against employees of such agency, whether subject to the provisions of the Merit System or in unclassified service, for:
1. Disclosing public information to correct what the employee reasonably believes evidences a violation of the Oklahoma Constitution or law or a rule promulgated pursuant to law;
2. Reporting a violation of the Oklahoma Constitution, state or federal law, rule or policy; mismanagement; a gross waste of public funds; an abuse of authority; or a substantial and specific danger to public health or safety;
3. Discussing the operations and functions of the agency, either specifically or generally, with the Governor, members of the Legislature, the print or electronic media or other persons in a position to investigate or initiate corrective action; or
4. Taking any of the above actions without giving prior notice to the employee's supervisor or anyone else in the employee's chain of command. * * *

**55.** See *Wagner, supra* note 42, at 257.