2006 OK CIV APP 130

Stephani **BAYHYLLE** and Joseph Brent Smith, individually and on behalf of themselves and all others similarly situated, Plaintiffs/Appellees,

v.

**JIFFY LUBE INTERNATIONAL, INC.,** a foreign corporation, Defendant/Appellee,

and

Allison Moon, Edward Taras, and David Koplovitz, et al., Objectors/Appellants.

Nos. 101,613, 101,628.

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 12, 2006.

Harry Scoufos, Law Offices of Harry Scou-
fos, P.C., Sallisaw, OK, Janet R. Varnell,

Brian W. Warwick, Varnell & Warwick, P.A., The Villages, FL, Michael Maher, Maher, Guiley & Maher, P.A., Winter Park, FL, for Plaintiffs/Appellees.

James L. Kincaid, Jeffrey T. Hills, Crowe & Dunleavy, Tulsa, OK, Paula W. Hinton, Kenneth P. Held, Vinson & Elkins L.L.P., Houston, TX, for Defendant/Appellee.

Gary L. Richardson, Keith A. Ward, Richardson, Stoops, Richardson & Ward, Tulsa, OK, Marc A. Wites, Wites & Kapetan, P.A., Lighthouse Point, FL, for Objectors/Appellants.

Opinion by DOUG GABBARD II, Presiding Judge.

¶1 This is an appeal of the trial court's order approving the settlement of a class action lawsuit. Based on the record and applicable law, we affirm.

## FACTS

¶2 The original Plaintiffs, Stephani Bayhylle and Joseph Brent Smith, were customers of Defendant, Jiffy Lube International (Jiffy Lube), a company specializing in quick oil changes for around $30. Since 1999, this price included an "environmental surcharge" of between $.80 and $1.25. Plaintiffs claim the fee was not based on any governmental charge, but was simply made to enhance Jiffy Lube's profits. The amount generated by the fee, multiplied by millions of oil changes, amounted to more than $30,000,000.

¶3 Plaintiffs sued Jiffy Lube for breach of contract, unjust enrichment, and conspiracy, and sought to certify the lawsuit as a class action, pursuant to 12 O.S.2001 § 2023. They proposed two nationwide classes, each consisting of customers who had received a "Jiffy Lube Signature Service" oil change since October 1999 and had been charged the fee. These classes were designated the "company class," consisting of about seven million customers, who, like Plaintiff Smith, were customers of the 418 Jiffy Lube-owned stores (excluding New York stores), and the "franchise class," consisting of about 26 million customers who, like Plaintiff Bayhylle, were customers of Jiffy Lube's 1,789 franchises.

¶4 Two years after the litigation began, Plaintiffs and Jiffy Lube reached a settlement agreement. It provided that Jiffy Lube would stop charging the environmental fee in its company-owned stores and would give those customers a coupon good for $5 off an oil change. The settlement did not include coupons for the franchise store customers. Instead, Jiffy Lube promised to notify its franchisees that it was no longer charging the fee at its company stores and that all fees charged must be fair, reasonable, and properly disclosed. Plaintiffs asserted that the settlement achieved their main goal of eliminating the environmental fee in the company stores. They also argued that Jiffy Lube lacked authority to prohibit franchises from charging the fee. Under the settlement, Jiffy Lube also agreed to pay Plaintiffs' counsel $2,750,000 in attorney's fees.

¶5 The trial court issued a preliminary order approving the settlement. Notice and the coupon were provided to company customers by mail, and notice was provided to franchise customers through notices in two national publications, Parade Magazine and USA Weekend, plus through a website and a toll-free number. Several customers and class members (Objectors), who are Appellants here, objected to the settlement as failing to offer franchise customers any relief at all and only offering company customers a coupon less than what Jiffy Lube routinely offered the public at large.[1]

¶6 Plaintiffs responded by asserting that Objectors "simply waited in the wings" while Plaintiffs vigorously litigated the action and achieved results, and that Objectors' motive was to obtain a portion of the attorney fee award provided in the settlement. Objectors replied that, because they had resisted a narrow settlement, Jiffy Lube looked for and found a "sweetheart settlement" in the Oklahoma litigation.

---

1. Objectors in this case are Allison Moon, Edward Taras, and David Koplovitz, who filed the appeal; Rosemary Huron, who filed a cross-petition; and Bryan Marcus and Gregory Yatooma, who filed a separate appeal which was consolidated with this appeal.

¶ 7 In two orders, totaling 43 pages, the trial court approved the settlement and dismissed the lawsuit. The trial court began by noting that evidence showed the environmental fee was not charged for collection and disposal of used oil, but was used to offset costs of operating the company stores. The trial court then set out the rules for evaluating a proposed settlement of a class action. Essentially, these rules require that, before giving its approval, a court "must find that the settlement is fair, adequate and reasonable and is not a product of collusion between the parties." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C.Cir.1998) (quoting Fed.R.Civ.P. 23(e)).

¶ 8 In the case at bar, the trial court stated: "[T]he Court concludes that the Settlement is fair, adequate, and reasonable in that it contemplates all Class Members in this case, given their claimed damages and their low probability of success on the merits." On this last point, the court noted several problems:

(1) questions existed regarding contract formation, the voluntary payment doctrine, and agency issues;

(2) liability questions existed, given that the fee was disclosed to customers and evidence indicated Jiffy Lube's environmental costs were greater than the total surcharge collected; and

(3) questions existed about Jiffy Lube's liability to franchise customers since franchises were separate companies not under the day-to-day control of Jiffy Lube.

Regarding the last issue, the court noted Jiffy Lube had the right to regulate services, products, and advertisements of its franchisees, but not prices (including whether to charge the environmental fee) because the franchise agreements made franchisees independent contractors who separately owned and operated their businesses. The court stated all these factors accounted for the settlement not including coupons to franchise customers, and noted those customers retained the right to bring lawsuits against franchise stores.[2] Objectors appeal.[3]

## STANDARD OF REVIEW

¶ 9 Oklahoma's class action statute requires that a class action shall not be dismissed or compromised without the approval of the court. 12 O.S.2001 § 2023(E). Because § 2023 bears great similarity to the provisions of Federal Rule of Civil Procedure 23, we may resort to federal authority to shed light on its rationale. *Mattoon v. City of Norman*, 1981 OK 92, ¶ 8, 633 P.2d 735, 737. The federal courts have held that a trial court's approval of a class action settlement is reviewed for abuse of discretion. *In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1266 (10th Cir.2004). This is the general standard of review in class action certification cases. *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 4, 689 P.2d 299, 301.

## ANALYSIS

¶ 10 Objectors first assert that the settlement is not fair and reasonable because millions of franchise customers will not receive the coupon sent to company store customers or any other tangible benefit, even though they suffered similar harm.

¶ 11 In determining whether a settlement is reasonable, the trial court's primary task is to evaluate the terms of the settlement in relation to the strength of the plaintiff's case. *Thomas v. Albright*, 139 F.3d 227, 231 (D.C.Cir.1998). Here, the trial court addressed a number of weaknesses with Plaintiffs' case against the franchises. The trial court expressed concern that the voluntary payment doctrine would bar recovery, because the surcharge was disclosed to customers in ads and on their bills. *See McWethy v. Telecommunications, Inc.*, 1999 OK CIV APP 91, 988 P.2d 356. The court was also concerned about the fact that actual environmental costs to Jiffy Lube were greater than the fee charged customers. Finally, the court noted that agency issues existed regarding whether Jiffy Lube could be liable for a franchise's charging of the fee. The trial court concluded that liability was "tenuous at best," since Jiffy Lube received

---

2. In fact, suits were apparently pending in other jurisdictions.

3. Because we find the issues adequately briefed, we deny Objectors' motion for oral argument.

none of the fee charged by the franchises (except for a 4% to 5% royalty), and that the franchise agreement did not give Jiffy Lube the authority to either set prices or forbid the franchises from charging the fee.

¶12 Objectors asserted Jiffy Lube is vicariously liable for the franchises' actions because it receives a royalty, provides software, controls what products can be sold and how they can be advertised, and has made the settlement coupons redeemable at franchise stores. However, they failed to sustain their burden of proving an agency relationship. *See Gabler v. Holder and Smith, Inc.*, 2000 OK CIV APP 107, ¶18, 11 P.3d 1269, 1274.

¶13 In *Enterprise Management Consultants, Inc. v. State ex rel. Oklahoma Tax Commission*, 1988 OK 91 n. 15, 768 P.2d 359, 362, the Oklahoma Supreme Court noted that it is *the detailed assertion of control* that may make a franchise agreement the source of an agency relationship. The Court analyzed a number of decisions in which franchisors retained "broad discretionary power to impose upon its franchisees virtually any regulation it desired," "complete control over its franchisee's business operations," and "control over virtually every aspect of its franchisee's business." *Id.*

¶14 Clearly, such a relationship does not exist between Jiffy Lube and its franchisees. Section 12.5 of the Franchise Agreement provides that the franchisee determines pricing and whether to impose the "environmental" surcharge:

> The Franchisee may determine the retail prices for products and services offered at the Franchise Center. Jiffy Lube or other Jiffy Lube franchisees may advertise or recommend specified retail price; such recommendations are suggestions only, and do not bind the Franchisee to adopt any particular prices or pricing strategy.

While Objectors argue that franchise customers receive nothing but a vague promise that Jiffy Lube will encourage its franchisees to eliminate the fee, Jiffy Lube has no authority to require them to do so.

¶15 The many questions raised concerning Jiffy Lube's liability for its franchisees' actions support the conclusion that the trial court did not abuse its discretion in approving the settlement and rejecting Objectors' contentions. Furthermore, the settlement agreement specifically states that, while franchise customers were releasing their claims against Jiffy Lube, they retained their rights to pursue individual claims against the franchisees.

¶16 Objectors also assert the amount of the coupon given corporate customers is inadequate. They argue that Jiffy Lube has offered other coupons to the public that are worth more than $5, and that Jiffy Lube's promise to stop charging the fee should not be considered a benefit because it did so before the settlement was approved.

¶17 The trial court's decision was supported by the testimony of Stephen Gardner, Plaintiffs' expert witness and an experienced class action/consumer affairs litigator. He testified the major benefit of the settlement was Jiffy Lube's cessation of the practice of charging the fee, which he termed "a huge, huge benefit," and stated it would be reasonable to assume that the practice would have continued if no lawsuit had been brought. This view is consistent with the statement by Plaintiffs' counsel at the fairness hearing that, "[t]his lawsuit was about stopping a consumer rip-off."

¶18 The expert also stated the coupons were an additional benefit. While coupons may bring a marketing benefit to Jiffy Lube, they are an accepted part of class action settlements, and have even been incorporated into federal class action legislation. *See* Robin Miller, Annotation, *Construction and Application of Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005)*, 2005 A.L.R. Fed.2d 2, 2005 WL 957343. Here, the expert noted that, while the coupons are "a lagniappe, just an extra," they are also of beneficial value to a significant number of class members since they contain no requirement of filling out and mailing in a proof of claim. This fact and the value of the coupon relative to the cost of the service increase the likelihood the coupons would be used. In *In re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 808 (3rd Cir.1995),

a federal court criticized a settlement that provided for a $1,000 coupon off a new truck on the grounds that the cost of buying the good was so high that many class members would be unable to use the coupon. That is not a problem here.

¶ 19 A court should not reject a class action settlement merely because individual class members complain they would have received more had they prevailed in a trial. *Thomas v. Albright*, 139 F.3d 227, 231 (D.C.Cir.1998). It is true that some class members who paid for multiple oil changes will only receive one coupon under the settlement agreement, while others who paid for one oil change will receive a coupon greater than the amount they were improperly surcharged. However, while another settlement agreement, such as a cash award, might be more advantageous to customers, this alone is not a sufficient reason to reject a settlement.

¶ 20 Objectors also assert the settlement was unreasonable due to a mutual mistake of the parties. The trial court's order required the coupons to be "freely transferable and stackable up to $10 with other Settlement Coupons," and to be combinable with non-settlement coupons that do not contain a restriction on doing so. Objectors assert the original intent of the parties during negotiations was to make the coupons stackable up to $10 with *any* other coupon.

¶ 21 Even if we assume there was some confusion, we reject this argument. The ultimate issue facing the trial court was not whether to enforce a contract between two parties—a situation to which the doctrine of mutual mistake might apply—but whether the agreement was fair, adequate, and reasonable. Here, we find no abuse of discretion, especially since the notice to class members correctly reflected the coupon's value and stackability.

¶ 22 Objectors also assert that notice of the settlement to franchise customers did not satisfy due process standards. The argument is based on the requirement that individual notice must be provided to those class members who are identifiable "through reasonable effort," *In re Nissan Motor Corp.*

*Antitrust Litigation*, 552 F.2d 1088, 1097 (5th Cir.1977), and where the name and address are known or are very easily ascertainable. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76, 94 S.Ct. 2140, 2151–52, 40 L.Ed.2d 732 (1974). Individual notice was provided to company class members, but not to franchise customers.

¶ 23 Generally, in class action suits, there is no requirement of individual notice of a proposed settlement to members of the class. 59 Am.Jur.2d *Parties* § 114 (2002). In fact, Oklahoma provides that notice of the trial court's proposed dismissal or compromise of the action shall be given to all members of the class "in such manner as the court directs." 12 O.S.2001 § 2023(E). Clearly, this is a matter within the trial court's discretion. Here, the record does not indicate that all franchise stores kept detailed customer records or that Jiffy Lube could otherwise easily determine which franchise customers were charged the fee. This, coupled with the fact that franchise customers retained their right to pursue similar suits against the franchisees, lead us to conclude that the trial court did not abuse its discretion.

¶ 24 Finally, Objectors imply, relying on language taken from some authorities in other states, that the trial court had a "fiduciary" duty to customers which it failed to perform. We disagree. Oklahoma's class action statute does not impose a "fiduciary" duty upon the trial courts, nor does it impose any higher duty upon those courts than the considerable duties they already have. In this case, the trial court's decision was well-founded, amply supported by the facts, and not an abuse of discretion.

¶ 25 Accordingly, the trial court's decision is affirmed.

¶ 26 AFFIRMED.

REIF, J., and GOODMAN, J. (sitting by designation), concur.