2013 OK CIV APP 64

**LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM, Louisiana School Employees Retirement System, New Orleans Employees' Retirement System, Firefighters Pension and Relief Fund for the City of New Orleans, and the York County Employees' Retirement System, Plaintiffs/Appellees,**

v.

**Aubrey McCLENDON, Richard Davidson, Pete Miller, Frank Keating, Breene Kerr, Charles Maxwell, Donald Nichols, Fred Whittemore, and Chesapeake Energy Corporation, Defendants/Appellees.**

**M. Lee Arnold and James Clem, Appellants.**

**No. 110426.**

Court of Civil Appeals of Oklahoma, Division No. 1.

May 23, 2013.

---

Kenyatta R. Bethea, Holloway, Bethea & Osenbaugh, P.L.L.C., Oklahoma City, Oklahoma, George C. Aguilar, Robbins, Umeda, L.L.P., San Diego, California, Michael I. Fistel, Jr., Holzer, Holzer & Fistel, L.L.C., Atlanta, Georgia, for Appellants.

John E. Barbush, John E. Barbush, P.C., Oklahoma City, Oklahoma, for Appellees Louisiana Municipal Police Employees' Retirement System, Louisiana School Employees' Retirement System, New Orleans Employees' Retirement System, Firefighters Pension and Relief Fund for the City of New Orleans, and the York County Employees' Retirement System.

Spencer F. Smith, Timothy J. Bomhoff, McAfee & Taft, A Professional Corporation, Oklahoma City, Oklahoma, Robert P. Varian, Orrick, Herrington & Sutcliffe, L.L.P., San Francisco, California, for Appellees Aubrey McClendon, Richard Davidson, Pete Miller, Frank Keating, Breene Kerr, Charles Maxwell, Donald Nichols, Fred Whittemore, and Chesapeake Energy Corporation.

LARRY JOPLIN, Chief Judge.

¶ 1 Appellants M. Lee Arnold and James Clem (Objectors or Appellants) seek review of the trial court's order approving settlement of the underlying derivative action by and between Plaintiffs/Appellees Louisiana Municipal Police Employees' Retirement System, Louisiana School Employees' Retirement System, New Orleans Employees' Retirement System, Firefighters Pension and Relief Fund for the City of New Orleans, and the York County Employees' Retirement System (individually, by name, or collectively, Plaintiffs), and Defendants/Appellees Aubrey McClendon, Richard Davidson, Pete Miller, Frank Keating, Breene Kerr, Charles Maxwell, Donald Nichols, Fred Whittemore, and Chesapeake Energy Corporation (individually, by name, or collectively, Defendants). In this appeal, Objectors assert the trial court abused its discretion in denying their applica-

tion for limited pre-settlement discovery, and in approving settlement.

¶ 2 In December 2008, the Board of Directors for Defendant Chesapeake Energy Corporation awarded the company's founder, Chief Executive Officer and Chairman, Defendant Aubrey McClendon, a new, five-year contract and multi-million dollar compensation package.[1] In March 2009, Defendant Louisiana Municipal Police Employees' Retirement System (LMPERS) filed its petition for writ of mandamus in the trial court, citing as authority, 18 O.S. § 1065, and seeking the inspection of Chesapeake's Board minutes and other books and records concerning the compensation package award. The trial court denied the petition, holding the information sought was publicly available in Chesapeake's corporate filings with the Securities Exchange Commission, and LMPERS appealed. *Louisiana Municipal Police Employees' Retirement System, et al. v. Chesapeake Energy, et al.,* Case No. 107,589.

¶ 3 Beginning in April 2009, the other Plaintiffs commenced separate derivative actions in the trial court, and the trial court consolidated the several actions for disposition. Collectively, the Plaintiffs complained that Chesapeake's Board breached its fiduciary duties to the company and shareholders by granting an excessive compensation package to McClendon. The trial court denied the petitions, finding Plaintiffs had not made a pre-suit demand of Board to correct or modify the award of compensation, and had not shown the futility of such a demand, fatal to its prayer for inspection of corporate records, and Plaintiffs appealed. *New Orleans Employees' Retirement System, et al. v. McClendon, et al.,* Case No. 108,146.

¶ 4 While the appeals stood pending, Plaintiffs and Defendants entered into settlement negotiations, and in August 2011, entered into a Memorandum of Understanding setting forth the terms of settlement, which, inter alia, required McClendon to repay $13 million and required Board to reform the rules for Chesapeake corporate governance, as well as the payment of some $3.75 million for Plaintiffs' attorney's fees. At about the same time, the Court of Civil Appeals issued its opinion in Case No. 108,146 to affirm the trial court's dismissal of claims. Plaintiffs filed their Petition for Certiorari to the Oklahoma Supreme Court, and sought a stay of proceedings pending settlement, which the Supreme Court granted pending our decision in the earlier case.

¶ 5 In September 2011, Objectors, owners of one hundred thirty four (134) shares of Chesapeake stock, commenced a derivative action in Federal court, and shortly thereafter, Defendants notified them of the pending settlement. Dissatisfied with the terms of settlement negotiated by Plaintiffs and Defendants, Objectors requested additional information from Defendants, which they refused to provide. Objectors sought expedited discovery in the Federal court, which the Federal court denied, choosing rather to defer further action pending approval of settlement in the trial court.

¶ 6 In November 2011, Plaintiffs and Defendants filed a joint motion for preliminary approval of the negotiated settlement. In January 2012, Objectors filed their written objections to approval of the settlement, arguing the terms of which were neither fair, reasonable nor adequate. Objectors also filed an application for limited discovery, seeking information relating to the fairness, adequacy and reasonableness of the settlement. Plaintiffs and Defendants responded, setting forth the efforts each undertook to assure the fairness of the settlement, including the inspection of books and records, and significantly, resulting in Defendant Board's agreement to reform it rules of corporate governance.

¶ 7 On January 30, 2012, the trial court conducted a "fairness hearing." Recalling its previous holding concerning the availability of information concerning the compensation awarded McClendon in the corporate

---

1. Valued in excess of $124 million, about $75 million went to cover McClendon's investments in company stock; according to some, this award prevented what might have been the total collapse of the company, but others suggest it was nothing but a "bailout." Some $13 million of the package compensated McClendon for his contribution of an antique map collection to the company.

filings with the SEC, the trial court refused Objectors' request for expedited discovery, and refused to permit further introduction of evidence on the fairness issue. Upon consideration of the parties' submissions and arguments by Plaintiffs and Defendants, and citing the factors to be considered set out in the cases of *Velma–Alma Independent School Dist. No. 15 v. Texaco, Inc.*, 2007 OK CIV APP 42, 162 P.3d 238, and *Bayhylle v. Jiffy Lube Intern., Inc.*, 2006 OK CIV APP 130, 146 P.3d 856. the trial court approved the settlement:

> ... The only issue for this court is whether it's fair, reasonable and adequate. And the factors are set forth in the *Jiffy Lube* case and there are some other factors come up in the *Velma–Alma* case. . . .

> ... There is no doubt in this court's mind, looking at the background of counsel in this case, both on the plaintiffs' side and the defense side, there is no doubt that this was a settlement that was fairly and honestly negotiated. When you look at the résumé, the history and experience of each of these firms, the court is not going to question their abilities and the job they have done in this case. There is no reason for this court to believe anything happened in this case other than the fact that there was probably some difficult negotiation between and among some firms who have a long history of doing this. So I commend counsel for that.

> ... The second part of this is the outcome of this case. These cases are tough. But not only in Oklahoma, all over the country. They are difficult to litigate. They are improbable in outcome, and they can get very, very expensive, and some meet with little or no result except the cost to the shareholders. That was a potentiality of this case. I think that's been recognized by everyone involved in this case. And winning at one level of appeal in the State of Oklahoma, I will assure you, does not lend itself to the same finding by the highest court in this state. . . .

> But there is a difficulty in this case, for the factors that were set forth when we had the original hearing and the factors we've discussed today. This was a case that was dangerous for all sides. Both for Chesapeake and for the plaintiffs and for the shareholders who have to be looked at in this case who have brought this case.

> And the third factor dealing with this case is the present value of this settlement related to a future or possible outcome. There is no doubt in this court's mind if this litigation were to continue, I'm not sure the effect of the outcome [would] change ... the value of it in [the] relationship [between] what's taking place here today and ... what could be obtained.

> [And] I've already looked at the attorneys fees requested in this case. There's been no dispute about those by any of the objectors, and they comply with [applicable standards], and I'm looking at those attorneys fees in this litigation thus far. And we're talking about a significant amount of money to the ordinary man and the ordinary shareholder. By all reasonable probability, that amount could triple or quadruple or be even more than that with maybe an outcome that was not as good or just a little bit better. That's risky business. So this case has met that particular factor. . . .

> And I have to look at something in this case and that's the judgment of the parties involved in this case. We're looking at institutional investors. Not just one institutional investor, five institutional investors, ... [and] I am particularly impressed by the fact that, out of all these shares of stock in this country, approximately 660 million, but maybe a few less than that, we're talking about it, out of all those shares, there are no other objections in this case either by individual shareholders other than Mr. Clem and Mr. Arnold or other institutional investors. And the court has to take judicial notice of th[e] fact ... the notice [of settlement] was complied with. If they've all looked at it and have not sought to come into this court and file an objection, then they must be satisfied with what counsel for the plaintiffs and counsel for Chesapeake have done in this case.

> ... [L]ooking at the factors in this case that are set forth by the laws and the case

law in the State of Oklahoma, for the court not to accept this settlement on behalf of Chesapeake and the shareholders in this case I think would be a tragedy. So with that, the court is going to approve the settlement as entered into by the five institutional plaintiffs in this case, the shareholders and Chesapeake, and I do believe it's in the best interest of all those that are involved in this situation, the future of Chesapeake as well as the future of these shareholders....

Objectors then filed their Petition in Error to commence the instant appeal.

¶ 8 In their first proposition, Objectors assert the trial court abused its discretion when it denied them limited discovery prior to approval of the settlement. Objectors argue that, without pre-settlement discovery, neither they nor the trial court possessed adequate information to determine the fairness of the settlement.

¶ 9 In their second proposition, Objectors complain the trial court abused its discretion in approving the settlement. Here, Objectors assert the settlement is patently and facially unfair and unreasonable, given the size of the $127 million compensation package awarded to McClendon, and the wholly inadequate settlement requirements for McClendon's repayment of only $13 million, the mere reformation of the rules for corporate governance, and payment of $3.75 million for Plaintiffs' attorney's fees.

¶ 10 In these propositions, Objectors urge that we adopt the substantive law of Delaware, which affords shareholders the right to discovery in opposition to the proposed settlement of a derivative action, in order to determine the fairness of the settlement negotiated by the derivative plaintiffs, and the good faith and competence of the plaintiffs in settling the derivative claims. *See, Ginsburg v. Phila. Stock Exch., Inc.,* 2007 WL 2982238 (Del.Ch.2007); *In re MAXXAM Inc.,* 659 A.2d 760 (Del.Ch.1995); *In re Amsted Indus., Inc.,* 521 A.2d 1104 (Del.Ch.1986); *Wied v. Valhi, Inc.,* 466 A.2d 9 (Del.1983). Under these standards, say the Objectors, the trial court should have applied a heightened level of review before approving the settlement. *See, In re MAXXAM, Inc.,*

659 A.2d at 776–777. Moreover, Objectors assert, because the Plaintiffs made no pre-suit demand for resolution of the derivative claims, the Plaintiffs were adjudicated without standing to press the derivative claims by the trial court in dismissing the case, and the Court of Civil Appeals affirmed that judgment in Case No. 108,146. So, say Objectors, and without a complete revelation of all the facts and circumstances surrounding the negotiation of settlement through discovery, neither they nor the trial court possessed adequate evidence on which to make an informed decision concerning the fairness and reasonableness of the settlement, without which, settlement could not be approved.

¶ 11 In this respect, however, the parties cite, and we find, no authority compelling us to adopt a "heightened" level of review of the fairness, adequacy, and reasonableness of the settlement in the present case. Prior decisions of the Oklahoma appellate courts clearly hold that orders approving settlements should be reviewed for an abuse of discretion. *See, e.g., Velma–Alma Independent School Dist. No. 15 v. Texaco, Inc.,* 2007 OK CIV APP 42, ¶ 18, 162 P.3d 238, 243.

¶ 12 So, too, on matters of discovery, the trial court is vested with broad discretion to grant or deny discovery as the circumstances dictate, and its decision will not be disturbed unless affected by an abuse of discretion. *Malloy v. Caldwell,* 2011 OK CIV APP 26, ¶ 12, 251 P.3d 183, 185; *Bank of Oklahoma, N.A. v. Briscoe,* 1995 OK CIV APP 156, ¶ 27, 911 P.2d 311, 318. "To reverse a trial court on the ground of abuse of discretion it must be found that the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence." *Abel v. Tisdale,* 1980 OK 161, ¶ 20, 619 P.2d 608, 612. Absent statutory or precedential direction otherwise, we hence review the trial court's orders denying discovery and approving settlement for any abuse of discretion.

¶ 13 In denying pre-settlement discovery, the trial court reasoned that, because the case had been pending for over two years, and because the basic facts underlying the Board's award to McClendon of a new contract and the questioned compensation

package were available from a review of Chesapeake's corporate SEC filings and adequately explain the action, discovery on the brink of settlement would only serve to prolong the litigation and increase the litigation expenses at the shareholders' ultimate detriment. Under these circumstances, we cannot say the trial court manifestly erred in arriving at that conclusion, and we discern no abuse of discretion by the trial court in denying Appellants' request for pre-settlement discovery.

 ¶ 14 On the issue of the settlement's approval, "the trial court must find the agreement fair, adequate, and reasonable." *Velma–Alma,* 2007 OK CIV APP 42, ¶ 18, 162 P.3d at 243. Stated otherwise, "before giving its approval, a court 'must find that the settlement is fair, adequate and reasonable and is not a product of collusion between the parties.'" *Bayhylle,* 2006 OK CIV APP 130, ¶ 7, 146 P.3d at 859. (Citation omitted.) In this analysis, the trial court should consider:

> (1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist, placing the ultimate outcome of litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable.

*Velma–Alma,* 2007 OK CIV APP 42, ¶ 18, 162 P.3d at 243, fn. 10. (Citations omitted.) "[Other] factors a trial court should weigh in determining fairness, adequacy, and reasonableness: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the likelihood of establishing liability; (5) the likelihood of proving damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the reasonableness of the settlement fund in light of the best possible recovery; and (9) the reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.*

 ¶ 15 Objectors nevertheless assert that, because Plaintiffs' derivative claims were dismissed for lack of a pre-litigation demand for curative action, and the Court of Civil Appeals affirmed, Plaintiffs had no standing to negotiate the settlement approved by the trial court. However, Plaintiffs filed their Petition for Certiorari to challenge the Court of Civil Appeals' affirmance, so, the opinion of the Court of Civil Appeals is not conclusive, and does not constitute a final determination of Plaintiffs' status or right to prosecute this action to settlement. *See, e.g., Nealis v. Baird,* 1999 OK 98, ¶ 53, 996 P.2d 438, 459.[2] *Accord, Grider v. USX Corp.,* 1993 OK 13, ¶ 11, 847 P.2d 779, 784; *Benham v. Plotner,* 1990 OK 64, ¶ 5, 795 P.2d 510, 512; *Depuy v. Hoeme,* 1989 OK 42, ¶ 10, 775 P.2d 1339, 1343, n. 23.

¶ 16 On the issue of fairness, reasonableness and adequacy, Objectors first argue that, given the size of the compensation package and the relative insignificance of the settlement's call for a return of less than ten percent of the compensation awarded, the Plaintiffs cannot be said to have "fairly and honestly" negotiated the settlement. Plaintiffs point out that the settlement negotiations began in February 2011, that the parties exchanged more than one proposed settlement agreement over the next five months, Plaintiffs continued to vigorously and actively pursue the appeals while negotiating with Defendants, and that negotiations on the issue of attorney's fees alone spanned more than six weeks.

 ¶ 17 On this issue, the trial court recognized the qualifications and expertise of counsel for both Plaintiffs and Defendants as above reproach. The difference between the size of the compensation package and the

---

2. "A final judgment is one in which no appeal has been perfected within the time allotted by law or one in which an appeal has been properly perfected and acted upon by the highest court whose review has been sought. The preclusive effect of the judgment on plaintiffs' personal injury claim will not arise until after our decision in this case is delivered and the mandate issues. Only then will the judgment in this cause become final...." (Footnotes omitted.)

terms of the settlement agreement bears no relationship to the other contingencies which faced Chesapeake's Board at the time. Board deemed it advisable to negotiate a new five-year contract with McClendon with incentives to dissuade him from leaving the company in a time of economic uncertainty, but McClendon had committed substantial personal assets to prop up the value of his company's stock, and, in the exercise of its presumed-correct "business judgment," Board elected to repay McClendon for his financial aid to the company. *See also, Warren v. Century Bankcorporation, Inc.*, 1987 OK 14, ¶ 7, 741 P.2d 846, 849, fn. 5.[3] Inasmuch as there are other factors which impact the fairness, adequacy and reasonableness of a settlement, we are unwilling to hold the size of the settlement in relation to the size of the compensation package establishes that the settlement was not fairly and honestly negotiated.

¶ 18 Objectors secondly complain the settlement releases their derivative claims still pending in the Federal court. Particularly, they point out they made pre-litigation demands for curative action, and are consequently in a stronger position than Plaintiffs to either compel Board to take more meaningful corrective action, or to negotiate a more favorable settlement.

¶ 19 In this respect, however, the trial court clearly considered whether further litigation might yield a result more favorable than the negotiated settlement, and concluded that the risk to the company and shareholders of a less favorable outcome compelled approval of the settlement. Indeed, that the institutional shareholders approved the settlement, and, except Appellants, no other holders of the some–660–million shares of Chesapeake stock objected to the settlement, constitute relevant factors for the trial court to consider when deciding to approve or reject a proposed settlement.

¶ 20 Given the risk to the company and shareholders of a less favorable outcome if the litigation proceeded, the lack of objections from any shareholders other than Ob-

jectors, and approval of the settlement by the institutional shareholders who had far more to lose than Objectors if litigation proceeded, we cannot say the trial court abused its discretion in concluding that application of the *Velma–Alma* factors dictated that the settlement agreement be approved.

¶ 21 The orders of the trial court denying discovery and approving settlement are therefore AFFIRMED.

BELL, P.J., and HETHERINGTON, J. (sitting by designation), concur.

---

3. "The business judgment rule is a presumption that a rational business decision of the officers or directors of a corporation is proper unless there exist facts which remove the decision from the protection of the rule—such as self-dealing and conflict of interest." (Citation omitted.)